## CLARK v. TRUST COMPANY.

1. If duly advertised, and fairly and properly conducted, a trustee's public sale of lands to a corporation which was the payee of the note secured by the deed of trust will not be set aside merely upon the ground that they brought a grossly inadequate price, and that he then and at the date of the deed was the actuary of the corporation, if the deed was made to him as an individual, and he, as such, and not in his official capacity, accepted and executed the trust thereby conferred.

2. Where a trustee's sale is valid, the title passing thereunder should be conveyed to the purchaser by a deed properly made and acknowledged.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

The cause was argued by *Mr. Samuel Shellabarger* and *Mr. J. D. Bigelow* for the appellant, and by *Mr. Enoch Totten* for the appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The preliminary question in this case involves the validity and effect of the sale made at public auction by Eaton, or rather by the auctioneer under his directions and as his agent.

McGhan and wife, by indenture dated Aug. 15, 1864, and duly acknowledged on 18th November, 1864, conveyed the premises in controversy to Edward Clark, in trust for the sole use and benefit of Mrs. McGhan, for and during her natural life, permitting her to use and occupy the same, and to receive and apply the rents and profits thereof, and in trust also to sell and convey absolutely in fee-simple or by way of mortgage, to such person or persons and for such use and purposes as Mrs. McGhan should in writing request and direct, her then or any future coverture notwithstanding. The indenture also contained a provision that, upon the death of Mrs. McGhan, the premises, or so much thereof as remained undisposed of, should be conveyed to the husband, his heirs or assigns.

By an indenture executed and duly acknowledged on 20th June, 1870, McGhan and his wife, together with Clark, the trustee, conveyed the property to Daniel Eaton, of the city of Washington, in trust to secure the payment of a debt due from McGhan and wife to the Freedman's Savings and Trust

Company, for the sum of $10,000, evidenced by their joint and several promissory note to that company, of like date with the indenture, and payable twelve months thereafter to the order of the company, with interest at the rate of ten per cent per annum, interest payable half-yearly. That conveyance was in part upon these trusts: 1. To permit Mrs. McGhan and husband to occupy the premises, and the rents and profits to have and apply to their sole use and benefit, until default be made in the payment of the note or interest thereon, or any proper charge or expense in and about the property; and, upon payment of the note, interest, and costs, to release and reconvey the premises to Clark, the trustee, for Mrs. McGhan; 2. Upon default in any of the said respects (quoting from the deed itself), " to sell the said piece or parcel of ground and premises at public auction upon such terms and conditions, and at such time and place, and after such previous public advertisement, as the said party of the second part or his heirs in the execution of this trust shall deem advantageous and proper, and to convey the same in fee-simple to the purchaser or purchasers thereof at his, her, or their cost or expense; and of the proceeds of said sale or sales first to pay all proper costs, charges, and expenses, and to retain as compensation a commission of five per cent out of the amount of said sale or sales; secondly, to pay whatever may then remain unpaid of said note and the interest thereon, whether the same shall be due or not; and, lastly, to pay the remainder, if any, to the said Louisa McGhan, her heirs or assigns."

On or about April 5, 1872, the note held by the company being unpaid, and interest to the amount of $1,400 having accrued thereon, Eaton, the trustee, made public advertisement that he would sell the mortgaged property at public auction to the highest bidder, at a designated hour, on April 24, 1872, giving the terms of such proposed sale. The sale was postponed from time to time until July 1, 1872, when it took place, the Freedman's Savings and Trust Company, by one of its officers, becoming the purchaser at the price of $13,000.

We find in the record a writing signed by Eaton, purporting to be an indenture executed July 1, 1872, whereby, in consideration of the sum of $13,000 in hand paid, he conveyed to the purchaser the property so sold at public auction.

It purports to have been "signed, sealed, and delivered in presence of — Brainerd H. Warner," and to have been acknowledged before said Warner as a notary public for the District of Columbia. As printed in the transcript, that writing shows no seal attached to the signature of Eaton, and the certificate of acknowledgment before the notary is without date. That writing was placed upon record on the 4th of February, 1873; but, for the want of a seal to Eaton's signature, complainants claim that it was ineffective for any purpose. Subsequently to that sale, the Freedman's Savings and Trust Company commenced proceedings in ejectment against McGhan and wife and Clark, to recover possession of the property. The defendants in that action failing to appear, judgment by default was entered against them on Nov. 7, 1872, and, under a writ of possession, McGhan and wife were ejected and the company put in possession of the property.

In 1873, Bradley purchased the same property from the company, and subsequently sold and conveyed it to Shepherd. Eaton died on the 16th of February, 1873, and McGhan died on Oct. 27, 1874.

In this action, commenced April 5, 1875, by Mrs. McGhan, and by Clark, as trustee in the deed already referred to, it is sought to redeem the property sold by Eaton under the deed of June 20, 1872. To that end the complainants, among other things, prayed that the deed from Eaton to the Freedman's Savings and Trust Company, and the subsequent conveyance under which Bradley and Shepherd (who are alleged not to have been *bona fide* purchasers) claim, be declared null and void, and the notes given by Bradley to that company be cancelled; that an accounting be had of the rents, issues, and profits of the premises, and that the amount thereof be applied on account of the said note of $10,000; and that the lease of the premises may be decreed to inure to the benefit of the complainants.

The court below having dismissed the bill, this appeal has been prosecuted, and the assignments of error present several propositions of law for our consideration. But, in the view we take of the case, it is only necessary to determine the preliminary question already stated, in reference to the validity and

effect of the sale at public auction by Eaton, the trustee, on the 1st of July, 1872.

That sale is attempted to be impeached upon several grounds, viz. : —

1. That a proper opportunity was not afforded to persons desirous to purchase the property to bid at the sale ; that, had there been, the property would have brought at least $2,000 more.

Upon a careful examination of all the evidence, we find nothing of a positive, substantial character sustaining this position. While there is some little conflict in the evidence as to what occurred upon the occasion of the sale, the overwhelming preponderance of testimony shows that the sale was duly advertised, and was fairly and properly conducted.

2. It is next contended that relief should be given because the price which the property brought was grossly inadequate. That fact alone does not constitute a sufficient reason to impeach the genuineness or validity of the sale. Besides, the inadequacy was not such as to shock the conscience, or raise a presumption of fraud or unfairness. Hill, Trustees, 152, note; *Lessee of Cooper* v. *Galbraith*, 3 Wash. C. C. 546 ; *Hubbard* v. *Jarrell*, 23 Md. 66.

3. The sale is assailed upon the further ground that Eaton, at the date of the deed to him, as well as when the sale was made, was the actuary of the Freedman's Savings and Trust Company, and that consequently no sale made by him, under the authority conferred by the deed of June 20, 1870, would cut off the equity of redemption.

Touching this objection, it is sufficient to say that the deed was not made to Eaton in his capacity as an officer of the company, nor did he act in that capacity when exerting the authority conferred upon him. The fact that he held official relations to that company did not incapacitate him from accepting the trust set out in the deed of June 22, 1870, or discharging the duties thereby imposed. It is true that his relations to the company would make it the duty of the court to scrutinize very closely all that he did in the execution of the trust; but we find nothing in the evidence to justify the belief that he acted otherwise than honestly and faithfully in the discharge of his

duty. The evidence does not justify the charge that *he* bid off the property for the company.

What we have said leads to the conclusion that the sale of July 1, 1872, was a valid sale, which the purchaser was entitled to have consummated by a conveyance executed and acknowledged in proper form. It is, therefore, of no consequence in this suit to inquire whether the writing executed by Eaton to the company, in pursuance of the sale made at public auction, was or was not sufficient to pass the title from him.

If he was bound, as we hold that he was, to have executed a sufficient conveyance, the court should not, by granting the relief asked, defeat the sale altogether. An ineffectual attempt, upon the part of Eaton, to consummate the sale does not authorize a decree setting aside the sale, which, as we have said, was in conformity to the deed, and was free from fraud or imposition, or such inadequacy of price as, upon recognized principles of equity, constitutes ground for relief.

*Decree affirmed.*