## SMITH v. BLACK, Trustee.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued October 26, 27, 1885.—Decided November 9, 1885.

Under a deed of trust, covering land in the District of Columbia, made by a debtor to two grantees, their heirs and assigns, to secure the payment of a promissory note, by which deed the grantees were empowered, on default, to sell the land at public auction, "on such terms and conditions, and at such time and place, and after such previous public advertisement," as they, "their assigns or heirs," should deem advantageous and proper, and to convey the same in fee simple to the purchaser, a sale was had by public auction, under a notice of sale, signed by both of the trustees, and duly published in a newspaper, but at the sale only one of the trustees was present. The proceedings at the sale were fair, both of the trustees united in a deed to the purchaser, and no ground appeared for setting the sale aside : Held, That the absence from the sale of one of the trustees was not a sufficient reason, of itself, for setting aside the sale, as against the former owner of the land.

The creditor, in this case, was the purchaser at the sale, and it was held that there was nothing shown which disqualified him from becoming such purchaser.

Alleged inadequacy of price considered, and the sale upheld, as against that allegation.

The purchaser, at the time he took the deed from the trustees, settled with one of the trustees, on the basis of a purchase for cash, although the terms of sale provided for a credit, and, as holder of the note secured, credited on it the amount of the net proceeds of sale, leaving a sum still due on the note: Held, That no right of the former owner of the land was violated by this course.

On the 23d of May, 1872, John Stearns, being the owner of certain land in the City of Washington, in the District of Columbia, on 20th Street, New Hampshire Avenue, and P Street Circle, or Dupont Circle, containing in all 19,886 square feet, executed, with his wife, a deed of trust, covering the land, as security for the payment of a promissory note for $5,500, made by Stearns, dated May 23, 1872, payable in five years, with interest at the rate of 6 per cent. per annum, payable semi-annually, to the order of Walter Linkins, the note being given to secure a part of the purchase money of the land. The grantees in the deed were John F. Fuller and James M. Latta,

their heirs and assigns. One of the trusts in the deed was expressed thus : " Upon default being made in the payment of the said note or interest as stipulated, or any proper cost, charge, commission, half commission, or expense, in and about the same, then and at any time thereafter, to sell the said piece or parcel of ground and premises, at public auction, upon such terms and conditions, and at such time and place, and after such previous public advertisement," as the said Fuller and Latta, "their assigns or heirs, in the execution of this trust, shall deem advantageous and proper, and to convey the same in fee simple to, and at the cost of, the purchaser or purchasers thereof, who shall not be required to see to the application of the purchase money ; and the proceeds of said sale or sales, first, to pay all proper costs, charges and expenses, and to retain as compensation a commission of five per cent. on the amount of the said sale or sales ; secondly, to pay whatever may then remain unpaid of the said note and the interest thereon, whether the same shall be due or not; and, lastly, to pay the remainder, if any, to the said John Stearns, his heirs or assigns."

On the 19th of April, 1873, Mrs. Mary A. Derby purchased the premises from Stearns, at the price of $1 per square foot, making $19,886. She paid $6,000 in cash, gave her notes for $8,386, and assumed the payment of the $5,500 note, with interest from November 23, 1872. Stearns conveyed the land to her.

On the 14th of April, 1875, Linkins sold the $5,500 note to the defendant Walter H. Smith. It fell due May 26, 1877, and was not paid. There was some negotiation between Mrs. Derby and Smith, in the summer of 1877, in regard to providing for its payment. Mrs. Derby, being in ill health, on October 27, 1877, conveyed the land in question (with other land) to her daughter, Mrs. Black, the plaintiff in this suit, her heirs and assigns, in trust to lease, sell and convey it, and, after paying expenses and commissions, to pay the proceeds to the grantor, her heirs, executors or administrators. There was further negotiation between Smith and Mrs. Black, but, the note being past due, with interest from May 23, 1877, the following

notice was published in the Evening Star, a newspaper in the City of Washington, the description of the land in the notice being the same as in the deed of trust to Fuller and Latta:

" B. H. Warner, Real Estate Auctioneer.

" Trustees' sale of valuable property bordering on the P Street Circle, New Hampshire Avenue and 20th Street.

" By virtue of a deed of trust, dated May 23d, A.D. 1872, and duly recorded in liber No. 682, folio 405, one of the land records of the District of Columbia, and at the request of the party secured thereby, we will sell at public auction, in front of the premises, to the highest bidder, on Wednesday, January 30th, A.D. 1878, at 4 o'clock P.M., the following real estate in the City of Washington, in said District, to wit: " [Here follows the description.] " Terms of sale: Three thousand dollars in cash; the balance in equal instalments in six and twelve months respectively, with interest at eight per cent. until paid, secured by a deed of trust on the property. Conveyancing at the cost of purchaser. If the terms of the sale are not complied with in five days after the sale, we reserve the right to resell at the risk and cost of the defaulting purchaser.

" JAMES M. LATTA,<br>
" JOHN F. FULLER,

" J. F. CALDWELL, *Salesman.*               *Trustees.*"

The sale took place by public auction, in front of the premises, at the time named in the notice, and they were sold to the defendant Smith, he being the highest bidder, for $7,000. On the 13th of February, 1878, Latta and Fuller, the trustees, executed a deed conveying the land to Smith, his heirs and assigns. The deed contained this recital: "And whereas the period fixed for the payment of said note has expired without the same being liquidated, and the said party of the first part, at the written request of the legal holder of the said note, being the party secured by said trust, did, on the seventeenth day of January, A.D. 1878, according to the provisions of said trust, advertise the hereinafter-described premises for 12 days in the

Evening Star, a newspaper printed and published in the City of Washington, District of Columbia, to be sold on the thirtieth day of January, A.D. 1878, at the hour of four o'clock P.M., on the premises, at which public sale, the said Walter H. Smith being the highest bidder, the same was sold to him for the sum of seven thousand dollars, the terms of which sale being three thousand dollars in cash, and the balance in two payments in six and twelve months, with interest at eight per cent. ; and whereas the said Walter H. Smith, having complied with the terms of said sale, the said party of the first part executes these presents."

On the 25th of March, 1880, the bill in this suit was filed by Mrs. Black, in the Supreme Court of the District of Columbia. The defendants were Smith, Fuller and Latta, and the trustees in two deeds of trust, each to secure $3,000, which Smith had executed, covering the premises, since they were conveyed to him, but it was stated in the bill that the plaintiff did not seek to disturb the rights acquired by those trustees. The bill alleged that in March, 1880, Smith dedicated to public use a part of the land fronting on P Street Circle, and sold to one Page, for $14,200, another part of it, receiving $8,200 in cash, and an agreement to pay the $6,000 secured by the two deeds of trust above named; and that the plaintiff did not seek to disturb the rights acquired by Page.

The bill prayed for a decree that, as to so much of the land as Smith did not convey to Page, (excepting what was dedicated to public use,) the sale by Fuller and Latta be set aside, and their deed to Smith be cancelled; that an account be taken of the proceeds of the sale by Fuller and Latta, and of the amount due on the $5,500 note at the time of the sale, and of all taxes on the property chargeable to the plaintiff ; that the proceeds of the property, whether from the sale to Page or from rents collected by Smith, be accounted for by him, and be brought into court to constitute a trust fund for the benefit of the plaintiff ; that the amount properly payable on the $5,500 note, and all costs and charges properly to be added thereto, be ascertained ; that the same be paid in liquidation of the note and charges, and the plaintiff and the land be released from

liability therefor; and that the balance of the fund be paid to her. There was, also, a prayer for general relief.

The bill alleged that Fuller knew nothing about the advertisement, or that the property was to be sold, or had been sold, until the day on which he executed the deed to Smith; that Latta acted on his own sole responsibility in fixing on the place and time and terms and conditions of the sale, and was the only trustee present at it; that Fuller signed the deed to Smith, at the request of the latter, who brought it to him when he was ill in bed, and told him that it was satisfactory to Linkins; that Linkins did not authorize Smith to represent that Linkins was satisfied with the sale; that the sale took place at 4 o'clock in the afternoon of an inclement day, few persons being present; that one person asked if a lot could be sold with a privilege, and was told it could not, although he was ready to make a bid therefor; that there was no competition; that the price of 35 cents a foot, at which it was knocked down to Smith, was wholly inadequate; that, in view of the absence of his co-trustee, the absence of bidders, and the low price offered by Smith, it was the duty of Latta to adjourn the sale; and that the property, even at a forced sale, would have brought, with the least competition, fifty cents a foot.

The bill further alleged that B. H. Warner was entrusted with looking after the property; that Smith knew this fact; that the plaintiff learned from a letter sent by Warner, dated January 24, 1878, that the sale was advertised for January 30, 1878; that she then sent a relative to Washington to see what could be done, and he sent back word that he could accomplish nothing, and that the holder of the note had purchased the property at the sale for $7,000; that she, being at a distance and unacquainted with business, relied on the fact that, if any irregularity had existed in the sale, notice of it would have been communicated by Warner, as the advertisement showed that the sale was to be conducted by an auctioneer from Warner's establishment; that she supposed that she no longer had any rights in the premises; that she had never received any account or communication from the trustees; that she had only within a few days past accidentally learned that there were

suspicious transactions at the sale, and that it was irregularly conducted; and that as soon as she heard it she took steps to discover the facts.

Smith answered the bill, as did Fuller and Latta. Proofs were taken, and, on a hearing, the court, at special term, on the 19th of February, 1881, made a decree setting aside the sale, except as to the land sold to Page and that dedicated to public use, and referring the case to an auditor to state an account between the parties as prayed in the bill. The auditor reported March 24, 1881, that there was due from Smith' to the plaintiff $5,860.30. Both parties excepted to the report as to items in the account, but the court, at special term, overruled the exceptions and confirmed the report as made, and rendered a decree, on April 12, 1881, finding that there was due on that day from Smith to the plaintiff $5,860.30; and ordering that within twenty days he pay her that sum, with interest from that day, and that Fuller and Latta, within thirty days, execute to her a deed of release for that part of the premises as to which the sale was set aside. The decree imposed the costs of the suit on the plaintiff. Smith appealed from the decree to the general term, and the plaintiff appealed to it from so much of the decree as omitted to allow her interest from the date of filing the bill, and from so much as overruled her exceptions to the auditor's report, and as charged her with costs. Both appeals were heard by the court in general term, and, on the 20th of March, 1882, it rendered a decree affirming both of the decrees of the special term, with the modification that Smith join with Fuller and Latta in the conveyance to the plaintiff; and he was ordered to pay the costs of the appeals. From that decree Smith appealed to this court.

*Mr. Samuel Shellabarger* and *Mr. S. S. Henkle* for appellant.

*Mr. Frank W. Hackett* for appellee argued the alleged frauds, on the facts, and further the following points of law:—
I. Smith could not be a purchaser. *Michaud* v. *Girod,* 4 How. 503; *Whitcomb* v. *Murchin,* 5 Mad. 91; 2 Perry on Trusts, Ed. 1882, § 602; *Ex parte Hughes,* 6 Ves. 617, 624; *Owen* v.

*Foulkes*, 6 Ves. 630, note, Sumner's Ed.  II. The sale in the absence of Fuller, and without his knowledge, is void: (*a*), Because the trustees did not determine the terms and conditions and place of sale as required by the trust deed, nor was such previous advertisement had as that instrument contemplated. *Downes* v. *Glazebrook*, 3 Meriv. 200, 208; Lewin on Trusts, 7th Ed. 501.  The burden is on the plaintiff in error to show that proper advertisement was made. *Gibson* v. *Jones*, 5 Leigh, 370; *Norman* v. *Hill*, 2 Paton & Heath, 676.  (*b*) Because Latta had no authority to sell in Fuller's absence. *Bergen* v. *Duff*, 4 Johns. Ch. 368, 369; *Sinclair* v. *Jackson*, 8 Cow. 543; *Wilder* v. *Ranney*, 95 N. Y. 7; *Brennan* v. *Willson*, 71 N. Y. 502; *Heard* v. *March*, 12 Cush. 584; *Powell* v. *Tuttle*, 3 Coms. 396; *Olmstead* v. *Elder*, 1 Seld. 144; *Peay* v. *Schenck*, Woolw. 175; *People* v. *Smith*, 45 N. Y. 772, 784; *King* v. *Stone*, 6 Johns. Ch. 323; *Sebastian* v. *Johnson*, 72 Ill. 282; *Chambers* v. *Jones*, 72 Ill. 275; *Meyer* v. *Bishop*, 12 C. E. Green [27 N. J. Eq.] 141, 145; *Taylor* v. *Hopkins*, 40 Ill. 442; *Brickenkamp* v. *Rees*, 69 Missouri, 426.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court. After stating the facts in the language reported above, he continued:

The decision of the special term on the merits, made by Mr. Justice Cox (MacArthur & Mackey, 338), went on the ground that Latta alone attended and conducted the sale, and Fuller was absent and took no part in it; and that Fuller did not ratify the sale by signing the deed, because he signed it without any consultation with Latta, and without any information as to the state of affairs at the sale, or any other information than that furnished by the recitals in the deed, which was presented to him by Smith and executed at his request.  The judge added: " I think it proper further to remark, that I have seen nothing in the evidence involving any imputation or reproach against the fairness and honesty of the purchaser."  It is stated that the affirmance by the general term was by a majority of the three justices, and proceeded on the same view as that held by the special term.

It is urged, as one ground for setting aside the sale to Smith, that he had so conducted himself in regard to the trust property as to have become incapable of purchasing and holding it as against the plaintiff ; and that, being the creditor, he acted with Latta, in fixing the terms of sale contained in the notice, to the same extent he would have done if he had been his co-trustee, and wrote the body of the notice and selected the auctioneer, and was the organ of communication between Latta and Fuller in regard to the sale. We do not see anything in what Smith did in regard to preparations for the sale which disqualified him from becoming the purchaser. He was not agent or trustee for the plaintiff, nor was he attorney for the trustees or for Latta. He was an attorney and counsellor-at-law, and, in purchasing the note, had acted for his sister-in law, and bought it with her money, as an investment for her, though taking the title to himself and acting as her agent and trustee in regard to the matter. Latta was selected as trustee by Stearns, and Fuller by Linkins. Fuller was unacquainted with the duties of a trustee, and Latta did not know him or where he was to be found. Smith insisting on a sale, the notice was prepared in accordance with terms agreed to by Latta, and was signed by him, and Smith undertook to find Fuller, and found him and obtained his signature to the notice. B. H. Warner, the auctioneer named in the notice, was the same person named in the bill, and had been employed by Mrs. Derby and the plaintiff to endeavor to sell the property or to raise money on it to pay the note held by Smith. We are unable to find any cause in these transactions, or in anything else developed in the case, which, under the most rigid rule, disqualified Smith from becoming a purchaser of the property. This court held in *Richards* v. *Holmes*, 18 How. 143, that, under a deed of trust like the present, the creditor for the satisfaction of whose debt the sale is made, has a right to compete fairly at the sale, and may become the purchaser. No fraud in fact is alleged in the bill or shown in the evidence, no effort to keep bidders away from the sale, or to have a surreptitious sale, no want of the usual notice of sale, nor any conduct on the part of Smith inconsistent with what was due from him, as a creditor, to Mrs. Derby

and the plaintiff. He waited nearly eight months after the principal of the note and the instalment of interest payable at the date of its maturity became due before he took measures for a sale. He allowed Mrs. Derby and the plaintiff to make every effort to sell the land at private sale, or to raise the money at a higher rate of interest than 6 per cent., to pay off the note. In July, 1877, Mrs. Derby wrote to him that she had tried in vain to get the money at a lower rate than 10 per cent., and asked him to have the debt extended at that rate at least until the fall, when she would sell the property if it brought no more than enough to pay the debt. In December, 1877, the plaintiff wrote to him that she had people working for her all the time trying to sell the ground, but she had failed so far to receive any offer which she thought more to her advantage than a sale under a foreclosure, and that she would sell the land to him at 50 cents per square foot, he paying enough in cash to repay his sister-in-law and the taxes on the property, and giving her his note for the rest at 8 per cent. interest, secured on the property. But the general taxes on the property were unpaid, and it had been sold for their non-payment, and there were special taxes against it, and Mr. Smith declined to purchase at the price asked. Prior to that, and in August, 1877, as his sister-in-law was pressing for some money, and in order to allow the plaintiff time to see if she could arrange the debt, he signed a note for $1,000 at 60 days, which Mr. Warner indorsed, and it was discounted and the money sent to the sister-in-law. This note was renewed for 60 days more, but, the plaintiff having accomplished nothing, proceedings for a sale were taken.

The question as to whether the signature "John F. Fuller" to the notice of sale, the original of which was produced in evidence, was genuine and made by Fuller, received some prominence in the proofs. Fuller's real name was "John E. Fuller." But he was called "John F. Fuller" in the deed of trust, and there is no dispute that he signed his name "John F. Fuller" to the deed to Smith, and to a paper he executed at the same time assigning to Smith his interest in the trustees' commissions. His testimony as to his not signing the notice

of sale amounts only to this, that he does not recollect signing it, and does not recollect the conversations and interviews with Smith, to which Smith testifies. His denial of the signature appears to be based on the fact that his name is John E. Fuller; and his ultimate answer is that he will not swear he did not sign the notice. Smith testifies positively that he saw him sign it, and gives details and circumstances. The evidence satisfies us that the notice was signed by Fuller. It also appears that the deed to Smith was fully read to, and understood by, Fuller before he signed it. The recitals in the deed, which were true, gave Fuller all the information it was necessary he should have, as a basis for his signature to it.

We come now to consider the alleged inadequate price obtained at the sale. In May, 1872, Stearns sold the land to Linkins at 45 cents per square foot. In April, 1873, Mrs. Derby purchased at $1 per square foot. At the time Mrs. Derby purchased, and during the summer of 1873, speculation in real estate in the neighborhood of this land was rife, and prices were high, but in the fall of 1873 came a revulsion, and a depression of prices, which continued until after the sale in this case. In March, 1880, Smith sold a little over 15,000 feet of the land to Page for $14,200, or about 92 cents per square foot. The price which Smith paid was a little over 35 cents per square foot. But, in view of the efforts which had been made by the plaintiff to sell the property or to raise money on it, and of all the facts of the case, it cannot be said that the property sold for less than it could have been reasonably expected to bring at public auction at the time. Smith made the first bid, at $4,500. The bidding reached $6,000 by $500 bids, and then either $6,500 or $6,900 by $100 bids, every alternate bid being Smith's. The $6,500 bid or the $6,900 bid was made by Mr. John W. Thompson. Then Smith bid $7,000. Latta, who was present, endeavored to induce Mr. Thompson to bid more, but he would not. Shailer, the person who visited Washington by the plaintiff's desire, was present at the sale. It was held at the usual hour of the day for such sales. The evidence shows that Smith immediately offered the property at his bid to several persons, including Mr. Thompson, but no

one would take it. We see no ground for setting aside the sale because of inadequacy of price. The bill in the case was filed a few days after Smith had sold to Page. The period of depression had passed. The price had gone up again to nearly what Mrs. Derby had paid. But, the fact of depression in value is no ground in itself for not upholding a sale under the trust deed, nor is a subsequent rise in value a ground for setting aside the sale. Those who speculate in real estate on credit take the risk of depression in value at the time the credit expires, and those who buy for cash in time of depression are entitled to the benefit of a subsequent rise in value.

The principal question discussed at the bar was the validity of the sale in the absence of Fuller. Latta, the other trustee, was present. No objection at the time of the sale to the absence of Fuller was made on behalf of the plaintiff, although she actually knew of the time and place of sale, and in consequence sent Shailer to Washington, and he attended the sale. The question of the necessity of the presence of a sole trustee at a sale under a deed of trust like the present was before the Circuit Court of the United States for the District of Columbia, in 1838, in *Connolly* v. *Belt*, 5 Cranch C. C. 405, on a bill filed by the grantor in the deed of trust to set aside a sale under it. It was contended that the sale was void because the sole trustee was not present, though he was represented at it by an agent. The objection was not made at the sale, but was raised by a bill filed by Belt, the debtor, against the creditor, and Semmes, the trustee, and the purchaser. The court was held by Chief Judge Cranch and Assistant Judge Morsell. The case of *Heyer* v. *Deaves*, 2 Johns. Ch. 154, was cited to it as holding that, under a statute of New York, which required all sales of mortgaged premises, under a decree, to be made by a master, a sale was invalid which was made by a competent agent of the master, in his absence. Chief Judge Cranch says, in delivering the opinion of the court: "Neither that statute nor that case is applicable to the present case, which is a sale under a common deed of trust. The time, place, terms and conditions were such as were deemed by the trustee most for the interest of all the parties concerned in the said sale, as ap-

pears by the answer of the trustee; and a sale made by an agent of the trustee, according to the terms and conditions, and at the time and place prescribed, is a sale by the trustee, there being no law requiring him to be personally present at the auction. No objection having been made by Mr. Belt, or his friends, on account of the absence of Mr. Semmes, the trustee, who was represented by Mr. C. Cox, as his agent, at the sale, and their suffering the sale to go on, is, I think, a waiver of the objection, if it would have been otherwise valid. But the objection, in itself, is of no avail " We are not advised of any decision since that one, in the District of Columbia, holding to the contrary, until the one now before us. It was made nearly 50 years ago, and has probably been followed in some cases as a rule of property, which it is; and the fact that, in view of it, no statute has been passed by Congress requiring the personal presence of a sole trustee, or of both trustees, at a sale under a deed of trust, is persuasive to show that the absence of a sole trustee, or of one of two trustees, ought not to be held, of itself, to vitiate a sale. Where there is a statute requiring a thing to be done by a known and responsible public officer, it may well be held that he must do it in person. But in a sale under a deed of trust like the present, where private persons appoint other private persons, their heirs and assigns, to make the sale, then if the notice of sale is given, and the deed is executed, by the sole trustee or the two trustees, and the sale is fairly conducted, and no ground otherwise appears for setting it aside, the mere fact that the sale is not attended by the sole trustee, or that it is made in the absence of one or even both of two trustees, is not alone a sufficient ground for holding the sale invalid. The absent trustee or trustees may, after the sale is advertised, become ill, or be called to a distance, not to return for some time. The creditor has rights as well as the debtor, and where, in the case of two trustees, the sale is conducted, as in this case, in pursuance of a notice signed by both of them, conforming to the deed of trust, and previously publicly advertised, and one of them is present, and the sale is fairly and properly made, and the proceedings under the deed of trust are otherwise regular, and both of the trustees after-

Dissenting Opinion : Field, J.

wards execute such a deed as was executed in this case, there is no ground of public policy or private right which requires it to be held that the absence of the second trustee vitiates the sale.

After the sale, and on the day on which the deed was executed to Smith, he made a settlement with Latta for the purchase. He elected to consider it as one wholly for cash. This he had a right to do, notwithstanding the terms of sale. No duty of the trustees or of Smith to the plaintiff was violated by this course. The amount of the note and interest was $5,739.25. The expenses of sale, commissions, taxes, and interest on them were put down at $2,086.78. Deducting this from the $7,000 left $4,913.22 to be credited on the $5,739.25, and that amount was credited on the note that day, leaving a deficiency of $826.03. Even if something less ought to have been charged against the $7,000, leaving the deficiency less than $826.03, it does not appear that there was not a deficiency.

*The decree of the court in general term, made March 20, 1882, is reversed, and the cause is remanded to that court, with directions to reverse, with costs, the decree of the court in special term made April 12, 1881, and to dismiss the bill of complaint, with costs.*

MR. JUSTICE FIELD, dissenting.

I am unable to assent to the judgment of this court, as I do not agree to the conclusion reached on the question of fact as to the previous concurrence of Fuller, one of the trustees of the property, in the notice of sale. He testifies that he never authorized the sale; never heard of it; nor did Smith ever speak to him on the subject until two weeks after it had taken place, when Smith came to his house and got him, then sick in bed, to sign the deed. He also testifies that the signature "John F. Fuller" appended to the notice of sale is not in his handwriting.

Under these circumstances I cannot but conclude that Mr. Smith is mistaken in his recollection, and that he has confounded Fuller's subsequent assent to the execution of the deed with a supposed previous assent to the notice of sale.

Fuller's ratification of the proceedings by joining in the deed does not remove, in my judgment, this objection, as it is evident that it was executed in ignorance of all the circumstances under which the sale took place. I agree with the court below that, " if a trustee can ratify the acts of his co-trustee, it can only be upon consultation with him, and upon full information as to all the facts;" and it is clear that this information was wanting in the present case.