RHODES v. TATUM, District Judge, et al. (No. 1466.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 16, 1918.)

1. WAR ☞4 — CONTROL OF RAILROADS—ABATEMENT OF ACTIONS.
   Under Act Cong. Aug. 29, 1916, empowering President to take possession of systems of transportation, and Act March 21, 1918, as to operation of transportation systems under federal control, section 9 of which gives the President all powers necessary or appropriate to give effect to the powers of regulation and control, the President's appointment of a Director General, and the orders of the Director General Nos. 18, 18A, and 26, in effect requiring suits

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

against carriers under federal control to be brought in the county where plaintiff resided at the time of the injury, or where the cause of action arose, and prohibiting trial of a suit brought in any other county, are valid.

2. CONSTITUTIONAL LAW ☞62—LEGISLATIVE POWERS—DELEGATION TO EXECUTIVE.

Congress may authorize an executive officer to make such rules and regulations as may be necessary to the effective execution of the laws, though their enforcement depends upon conditions to be ascertained by him and the exercise of his sound discretion.

3. CONSTITUTIONAL LAW ☞191 — EX POST FACTO LAWS—LAWS RELATING TO REMEDIES.

Act Cong. Aug. 29, 1916, empowering President to take possession of systems of transportation, and Act Cong. March 21, 1918, as to operation of transportation systems under federal control, general order No. 18 of the Director General of Railroads, general order No. 18A, and general order No. 26, which relate only to the remedy of a person injured and desiring to sue, are not subject to the objection that they are ex post facto or retroactive.

4. MANDAMUS ☞13—CONDITIONS PRECEDENT —APPLICATION TO EXECUTIVE OFFICER.

One injured in New Mexico suing railroad in Texas could not by mandamus compel immediate trial of his action contrary to general orders Nos. 18, 18A, and 26 of the Director General of the Railways, in the absence of compliance with No. 26, permitting application to the Director General for relief in event of unnecessary hardship by postponement according to those orders.

Application, on relation of J. M. Rhodes, for writ of mandamus to compel the trial of relator's action against the El Paso & Southwestern Railway Company and others to proceed, opposed by Reese Tatum, district judge, and others. Application denied.

R. R. Hazlewood, of Amarillo, and M. B. Keator, of Tucumcari, N. M., for relator. C. E. Gustavus, of Amarillo, and N. H. Lassiter, of Ft. Worth, for respondent Chicago, R. I. & G. Ry. Co. W. M. Peticolas, of El Paso, for respondent El Paso & S. W. Ry. Co.

HALL, J. This is an application for a writ of mandamus to compel the judge of the Sixty-Ninth Judicial District to proceed with the trial of the case of J. M. Rhodes v. El Paso & Southwestern Railway Company et al., pending in the district court of Oldham county. Relator, Rhodes, alleges that respondent Tatum is district judge of the Sixty-Ninth judicial district, and that Oldham county is one of the counties composing said district. The Chicago, Rock Island & Gulf Railway Company and the El Paso & Southwestern Railway Companies are joined as respondents. As grounds for the writ, relator alleges that on the ———— day of ————, 1917, he filed suit in the district court of Oldham county against the above-named railway companies, claiming damages in the sum of $20,000 for personal injuries inflicted upon plaintiff through the negligence of the agents of said companies; that service upon all of the defendants was complete for more than 10 days before the Au-

gust term, 1918, of the district court of Oldham county; that both of said defendants appeared and answered at that term, and when the case was called for trial plaintiff announced ready; that the said railway companies filed pleas in abatement, setting forth that both of said railway companies were under federal control, and prayed that the cause be abated during said control; that W. E. Gee, as special judge of said court, sustained the plea, and ordered that the case be postponed during federal control. Copies of the pleadings and the order of the district court are made a part of the motion. Plaintiff alleges that he is 60 years old, is a material witness in the trial of his case, and that the continuation of the war is uncertain, and a speedy trial is necessary for the protection of his rights. The record before us fails to show when the plaintiff's original petition was filed, but shows that the amended original petition was filed in the district court January 22, 1918, alleging that the relator was injured in the switchyards owned and operated jointly by the defendants in the town of Tucumcari, N. M. It is further alleged that relator was injured on or about the 23d day of January, 1917, by a switch engine striking and demolishing the hack or wagon in which relator was driving across one of the tracks in the yards. The El Paso & Southwestern Railway Company filed an answer, which we presume was filed at the August term, 1918, of the district court of Oldham county, in which it is alleged that, if any cause of action exists, it arose in Tucumcari, N. M., where plaintiff resided at the time of the alleged injuries; that Tucumcari is about 79 miles from the place of holding court in Oldham county, Tex.; that the defendants are under federal control, and are being operated by the national government, by the President, his officers and agents, as authorized by the Constitution and laws of the United States. As a basis of recovery plaintiff alleges there was negligence on the part of the employés of said railway companies, and by reason of such allegations it is necessary to have the testimony of such employés upon the trial; that the just interests of the government would be prejudiced by a trial at the August term of the court, in this: that there is a material shortage of employés to operate trains; that in the exercise of prudence defendants would be compelled to call for the attendance of a number of employés as witnesses, who are engaged in the operation of trains now being handled by the government. The answer sets out the names of eight witnesses, some of them it is alleged residing in Dalhart, some in El Paso, and the remainder in Tucumcari, N. M., and prays for an abatement of the action during the federal control of said railway companies. The Chicago, Rock Island & Gulf Rail-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

way Company adopted the answer of its co-defendant, and denied that it owned or operated any switch yards in Tucumcari, N. M., and alleged that the engine which it is charged caused the injury was not its engine, and that the employés operating it were not its agents or employés in any sense.

It appears from the record that the Hon. Reese Tatum, the duly elected judge of the Sixty-Ninth district, was absent, and that the Hon. W. E. Gee, a practicing attorney, was duly elected special judge, and upon the hearing of the motion to abate ordered that the suit be abated; that it remain on the dockets of the district court, but not subject to trial while the federal government exercised control of said railway companies. Exception was taken, and notice of appeal to this court was given. In open court it was agreed that the employé of the defendants in charge of the tower at the street crossing where plaintiff was injured is not now in their employ. In support of their motion the defendants presented general order No. 18, issued by Wm. G. McAdoo, Director General of Railroads, April 9, 1918, as follows:

"Whereas, the act of Congress approved March 21, 1918 [c. 25], entitled 'An act to provide for the operation of transportation systems while under federal control,' provides (section 10) 'that carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act * * * or with any order of the President, * * * but no process, mesne or final, shall be levied against any property under such federal control; and

"Whereas, it appears that suits against the carriers for personal injuries, freight and damage claims, are being brought in states and jurisdictions far remote from the place where plaintiffs reside, or where the cause of action arose, the effect thereof being that men operating trains engaged in hauling war materials, troops, munitions, or supplies are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes for a week or more, which practice is highly prejudicial to the just interests of the government, and seriously interferes with the physical operation of the railroads, and the practice of suing in remote jurisdictions is not necessary for the protection of the rights of the just interests of plaintiffs.

"It is therefore ordered that all suits against carriers while under federal control must be brought in the county and district where the plaintiff resides or in the county or district where the cause of action arose."

It further appears that this general order No. 18 was amended on April 18, 1918, by general order No. 18A, amending the last paragraph of the original order as follows:

"It is therefore ordered that all suits against carriers while under the federal control must be brought in the county or district where the plaintiff resides at the time of the accrual of the cause of action, or in the county or district where the cause of action arose."

General order No. 26, issued by W. G. McAdoo, as Director General of Railroads,

on May 23, 1918, was also introduced, and is as follows:

"Whereas, the act of Congress approved March 21, 1918, entitled 'An act to provide for the operation of transportation systems while under federal control,' provides (section 10) that carriers, while under federal control 'shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act, * * * or with any order of the President, * * * but no process, mesne or final, shall be levied against any property under such federal control,' and authorizes the President to exercise any of the powers of said act theretofore granted him with relation to federal control through such agencies as he might determine; and

"Whereas, by a proclamation dated March 29, 1918, the President, acting under the federal control act, and all other powers him thereto enabling, authorized the Director General, either personally or through such divisions, agencies, or persons, or in the name of the President, to issue any and all orders which may in any way be found necessary and expedient in connection with the federal control of systems of transportation, railroads, and inland waterways, as fully in all respects as the President is authorized to do, and generally to do and perform all and singular acts and things, and to exercise all and singular the powers and duties which in and by said act or any other act in relation to the subject hereof the President is authorized to do and perform; and

"Whereas, it appears that there are now pending against carriers under federal control a great many suits for personal injury, freight and damage claims, and that the same are being pressed for trial by the plaintiffs in states and jurisdictions far removed from the place where the persons alleged to have been injured or damaged resided at the time of such injury or damage, or far remote from the place where the cause of actions arose; the effect of such trials being that men operating the trains, or engaged in hauling war materials, troops, munitions, or supplies, are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes for a week or more, which practice is highly prejudicial to the best interests of the government, and seriously interferes with the physical operation of railroads, and the practice of trying such cases during federal control in remote jurisdictions is not necessary for the protection of the rights or the just interests of plaintiffs:

"It is therefore ordered that upon a showing by the defendant carrier that the just interests of the government would be prejudiced by a present trial of any suit against any carrier under federal control, which suit is not covered by general order No. 18, and which is now pending in any county or district other than that where the cause of action arose, or other than in which the person alleged to have been injured or damaged at that time resided, the suit shall not be tried during the period of federal control, provided if no suit on the same cause of action is now pending in the county or district where the cause of action arose or where the person injured or damaged at that time resided, a new suit may, upon proper service, be instituted therein, and if such is now barred by the statute of limitations, or will be barred before October 1, 1918, then the stay directed by this order shall not apply unless the defendant carrier shall stipulate in open court to waive the defense of the statute of limitations in any suit which may be brought before October 1, 1918. This order is declared to be necessary in the present war emergency. In the event of

unnecessary hardship in any case either party may apply to the Director General for relief, and he will make such order therein as the circumstances may require consistent with the public interests. This order is not intended in any way to impair or affect general order No. 18 as amended by general order No. 18A."

[1] The relator insists that these orders are without authority; that Director General McAdoo could not assume possession and control of the railroads; that President Wilson was not authorized to appoint him Director General; and that the court's order abating suits during the period of government control is not supported by any law. By the act of Congress approved August 29, 1916, c. 418 (39 Stat. 619), entitled "An act making appropriations for the support of the army for the fiscal year ending June 30, 1917, and for other purposes," it is provided:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

War having previously been declared against Germany and against Austro-Hungary, the President, joined by the Secretary of War, issued a proclamation, dated December 26, 1917, assuming control of railroads, and appointing Wm. G. McAdoo Director General, to operate all transportation systems in the performance of needed services in the prosecution of the war. The act before quoted, together with the President's proclamation, was reviewed in the federal District Court of Kentucky by Judge Evans in the case of Muir v. L. & N. R. R. Co., 247 Fed. 888. While in that case Judge Evans was considering the right of a railway company under the act of August 29, 1916, and the President's proclamation, to remove from state to the federal courts, the power of the President to assume control of the railroads of the country in the manner provided in the proclamation, and to appoint Wm. G. McAdoo Director General, is seriously questioned. It is there said:

"Under no established rule of interpretation can it be doubted that it was the intention of the legislative body to authorize, in time of war, the War Department, and no other, to take over the railroads for war purposes, such as transportation of troops and war materials, and for such other purposes as might be desirable in the emergencies of war. Besides being an appropriate function of the War Department, it was the plain meaning of the statute which Congress enacted that the War Department should have authority over it, and even if we assume (which is inconceivable) that the Secretary of War declined for that department to take up the war work indicated, we find nothing in the statute which authorizes it to be taken up by the Treasury Department, nor by a Director General of Railroads, Congress not having intrusted the work to either. And the situation, if strict rules were to operate, might involve consideration of the question whether the rule stated by the Supreme Court in Smith

v. Black, 115 U. S. at page 319, 6 Sup. Ct. 56, 29 L. Ed. 398, to the effect that, 'where there is a statute requiring a thing to be done by a known and responsible public officer, it may well be held that he must do it in person,' would not apply."

Further in the same opinion it is said:

"Certainly the proposition is so well established as to be elementary that Congress may authorize heads of departments or other officers to make regulations within certain limits, and, when made within those limits, such regulations have the force and effect of law, and may be enforced as such; but it has often been held that the delegation of authority to make regulatory orders gives no power to add to, take from, or modify the limitations prescribed by Congress." "On its face the act of August 29, 1916, does not give authority to the President to make or promulgate a proclamation of any character. No one, however, would contend that he had not obtained authority to issue such documents whenever he thought it proper to give notice or information to the public. But such papers cannot have any effect as laws, in the absence of express constitutional or congressional authorization."

The court concludes that the statute does not authorize the proclamation, and that it has no force as a law, and because the statute is silent upon the subject of litigation of any character, and does not attempt to close either the state or federal courts to any litigant, upon the ground that the property had been taken over by the government, the causes should not have been removed from the state to the federal court. It was doubtless this criticism of the act which induced Congress to pass the law of March 21, 1918, and we think this act cures the defects in the former act discussed by Judge Evans. One purpose of the act of August 29, 1916, and of the act of March 21, 1918, was to place all transportation companies under the control of the national government to facilitate the handling of troops, equipment, etc., necessary to a successful prosecution of the war. It is provided by section 8 of the latter act that "the President may execute any of the powers herein and heretofore granted him with relation to federal control through such agencies, as he may determine, and may fix the reasonable compensation for the performance of services in connection therewith," etc. This section, in effect, approves the appointment of a Director General, and approves the acts of such officer and his subordinates, done in the execution of the powers granted the President, and under its provisions we must accept the Director General and his department as one of the agencies selected by the President to aid him in the execution of the powers granted by the acts mentioned. Section 9 of the act is as follows:

That "the provisions of the act, entitled 'An act making appropriations for the support of the army for the fiscal year ending June 30, 1917, and for other purposes,' approved August 29, 1916, shall remain in force and effect except as expressly modified and restricted by this act; and the President, in addition to the powers conferred by this act, shall have and is hereby given, such other and further powers

necessary or appropriate to give effect to the powers herein and heretofore conferred. The provisions of this act shall also apply to any carriers to which federal control may be hereafter extended."

If it appears to the President that the practice of suing carriers in jurisdictions other than where the cause of action arose, or where the plaintiff resides, interferes with the efficiency of the transportation companies, section 9 confers the power upon him to adopt all reasonable means to relieve the condition and to abolish the practice.

[2] Congress may authorize an executive administrative officer to make such rules and regulations as may be necessary to the effective execution of the laws, even though the enforcement of such laws is made to depend upon conditions to be ascertained by him and the exercise of a sound discretion in the matter of its execution is given him. Section 10 of the act has this provision:

That "carriers, while under federal control, shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws, or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government."

Any order issued by Mr. McAdoo as Director General must be considered as the order of the President. General orders 18, 18A, and 26, above set out, were all issued subsequent to the approval of the act of March 21, 1918, and we must presume were issued for the purpose of putting into execution the provisions of the act and in furtherance of the President's effort to carry out the evident purpose of Congress in its enactment.

[3] Since the act and the orders referred to affect the relator's remedy only, they are not subject to the objection that they were ex post facto or retroactive in their effect. The importance of having absolute control of transportation systems in the prosecution of the war is a matter of common knowlege. After hearing the motion the trial judge decided that a trial of relator's case in the district court of Oldham county would be prejudicial to the justice interests of the government and would seriously interfere with the physical operation of the defendant railways. Under the record here the presumption of the validity of the court's order obtains. The case, therefore, comes within the purview of the general orders above quoted, and the further prosecution of the action should, we think, be controlled by their provisions. The court's ruling does not deny to relator the right to sue and in no degree does it effect the merits of his case. The order simply grants a stay of proceedings during federal control in the event relator insists upon prosecuting his suit in the district court of Oldham county, Tex. Under general order 18, as amended by general order 18A, relator has the right to take a nonsuit in the district court of Oldham county, Tex., and prosecute his actions against the defendant in Tucumcari, N. M. In entering the order postponing the trial in the district court pending federal control of the defendant railway companies, the trial judge was properly obeying these orders.

[4] General order No. 26 further provides: "In the event of unnecessary hardship in any case either party may apply to the Director General for relief and he will make such order therein as the circumstances may require, consistent with the public interests."

It does not appear that relator has applied to the Director General for relief before filing his petition for mandamus in this court, and we incline to the opinion that such application is a condition precedent to his right to appear here. An extraordinary emergency exists; the welfare of the nation is in jeopardy. As war measures the acts of Congress referred to above, and the orders issued in accordance with such acts, must be deemed to be necessary and proper under all the circumstances. Even though the effect of their enforcement would be to seriously handicap relator in the prosecution of his suit, we think merely personal rights should be postponed when the safety of the nation is involved. In our opinion, however, the enforcement of the orders is not a serious obstacle, and deprives him of the right only to prosecute his suit to judgment without delay in a court removed from the jurisdiction in which the right of action accrued.

The action of the trial judge in postponing the trial of the case in Oldham county was, under all the circumstances, legal, and the application for the writ of mandamus is denied.