**EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. VAUGHN.**

**VAUGHN v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.**

Nos. 6931, 6932.

Circuit Court of Appeals, Sixth Circuit.

April 9, 1936.

E. T. Seay and A. W. Stockell, both of Nashville, Tenn. (Walter Stokes and Seay, Stockell & Edwards, all of Nashville, Tenn., on the brief), for Equitable Life Assur. Soc. of United States.

A. H. Roberts, of Nashville, Tenn. (A. O. Denning, of Gallatin, Tenn., and Roberts & Roberts, of Nashville, Tenn., on the brief), for Vaughn.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appeals are from a decree in equity upon a bill seeking to set aside foreclosure of real estate on the ground of fraud or inequity in the conduct of the sale. The property having passed into the hands of an innocent purchaser, the bill contained an alternative prayer for damages. The appellant was the owner of the trust deed which was foreclosed under a power of sale contained therein, and the appellee is the debtor who with his wife executed the trust deed as security for a loan. The decree having awarded damages, the defendant, Equitable Life Assurance Society, appeals on the ground that there was no irregularity in the sale, while the debtor, Vaughn, cross-appeals on the ground that the damages were inadequate.

Although rescission may no longer be granted, we treat the case as one in equity. Connecticut Fire Insurance Co. v. McNeil, 35 F.(2d) 675 (C.C.A. 6); Hansel v. Purnell, 1 F.(2d) 266 (C.C.A. 6). Accordingly, we conceive it to be our obligation to review the entire record and weigh the evidence, giving such weight as is ordinarily given to the findings and opinion of the trial judge in determining whether the plaintiff has sustained the burden of proof resting upon him. Laursen et al. v. Lowe, 46 F.(2d) 303 (C.C.A. 6).

In 1914 the plaintiff purchased for the sum of $25,000 a farm of 135 acres in Sumner county, not far from Nashville, Tenn. On July 1, 1923, he borrowed $10,-000 upon the property from the Central Trust Company of Franklin, Tenn., the debt to mature in ten years, with interest payable annually at the rate of 5 per cent. To secure his notes for principal and interest, he executed a trust deed to R. W. McLemore as trustee. The deed contained a covenant to pay taxes when due, an acceleration clause permitting all of the indebtedness to be declared due at the option of the mortgagee in event of default, and a power of sale permitting the trustee to sell the property at such place as he might designate, the sale to be for cash and to bar all rights of redemption, dower, homestead, and exemption. The trust deed also provided for the appointment by the mortgagee of a substitute trustee in the event of the death, inability, or failure to act of the original trustee, and empowered the holders of the debt secured by it to bid and become purchasers at foreclosure sale. Shortly after the execution of the trust deed, the Central Trust Company assigned it, together with the notes, to the appellant. In 1929 McLemore resigned as trustee, and on October 8, 1932, the appellant appointed John M. Barksdale, a lawyer in the office of its counsel, as substitute trustee, registering the appointment in the register's office of Sumner county.

Vaughn defaulted in the payment of taxes for the year 1931, and in his interest

payments due July 1, 1931, and July 1, 1932. The taxes were paid by the defendant. Default not being cured, the whole debt was declared due and payable, and the substitute trustee advertised the sale of the land at public auction at the courthouse door in Gallatin, to be held on December 13, 1932. No question is raised as to the regularity of the advertisement. There was but one bid at the sale, made by the field representative of the mortgagee. The property was sold to the appellant for $6,000, and a deed pursuant to the sale executed and recorded. On the 27th of March, 1933, the appellant resold the property at private sale to Charles L. Powell of New York. The deed recited a consideration of $5 and other valuable considerations, but the actual consideration was $11,500. At the time of the foreclosure sale, the amount of the debt, including interest and taxes, was approximately $11,650.

The original bill charged the foreclosure sale to have been fraudulent and void in that the defendant through its agent had stifled bidding and deterred bidders for the purpose of buying in the property at an unfair and inadequate price; that there was a responsible bidder at the sale ready to bid more than the amount realized, but that the defendant represented that it would give him better terms and would not require him to pay cash if he would refrain from bidding and allow the defendant to bid in the property; that the defendant had fraudulently taken advantage of the depression in business and selected the most unfavorable time possible for making the sale. The allegations in the bill having all been put in issue by the answer, an amended bill was filed charging bad faith in the naming of Barksdale as substitute trustee, neglect and failure of the defendant to bid the amount of its debt, that there were other bidders at the sale who would have bid in excess of the amount offered but who did not hear the sale cried because of the low tones of the substitute trustee, and that the defendant had prevented a refunding of the debt by exorbitant demands for counsel and trustee fees. The relief prayed was that the purchase price of the land at the foreclosure sale be held to be grossly inadequate, and for judgment for the fair and reasonable value of the land, less the principal sum due on the notes with interest and taxes.

The court delivered an extended oral opinion reviewing the evidence, and later made specific findings of fact and conclusions of law. The averment that the defendant or the substitute trustee had stifled bidding and deterred bidders was not sustained. The court found, however, that the fair and reasonable value of the property at the time of the foreclosure was $17,000. In deference, however, to what was said by the Supreme Court of the United States in Cross v. Allen, 141 U.S. 528, 538, 12 S.Ct. 67, 35 L.Ed. 843, with respect to the want of expectation that mortgaged property upon forced sale would bring what it would at ordinary private sale, he based the damages upon a valuation of $13,500, there being evidence that a solvent bidder who had attended the sale but did not hear it cried was ready to bid that amount. Considering the sale price inadequate in view of this valuation, the court concluded that the incidents which justified the setting aside of the sale were (1) the grossly inadequate price paid for the land, (2) the unwillingness of the defendant to bid the full amount of its debt, (3) the appointment of a substitute trustee without the knowledge of the debtor, (4) the attitude of the defendant in refusing to purchase the plaintiff's unexpired insurance policies, (5) the choice of the worst possible time to advertise the sale, with the knowledge that Mr. Powell was willing to pay $13,500 for the land, (6) the failure of the defendant to credit the plaintiff's notes with the amount realized at the sale, and its refusal to deliver the notes or any of them to the plaintiff without sufficient reason for its refusal.

The fact alone that property sold at public sale brings an inadequate price does not constitute a sufficient reason to impeach the genuineness or validity of the sale unless inadequacy is such as to shock the conscience or raise a presumption of fraud or unfairness, Clark v. Freedman's Sav. & Trust Co., 100 U.S. 149, 152, 25 L.Ed. 573, nor does the fact of depression in value furnish a ground in itself for not upholding a sale under a trust deed, or a subsequent rise in value a ground for setting it aside. Smith v. Black, 115 U.S. 308, 318, 6 S.Ct. 50, 29 L.Ed. 398. Even were we to concede, which we do not, that present issues are governed by local law in the absence of an applicable statute rather than by general principles of equity applied in the federal courts, the law of Tennessee is not otherwise. Inadequacy of price will not sustain rescission unless so manifestly gross as to strike the mind with amazement or to shock the conscience, Meath v. Porter, 9 Heisk. (56 Tenn.) 224, 227; Wright v. Wilson, 2 Yerg. (10 Tenn.) 294, 296; Talbott v. Manard, 106 Tenn. 60, 59 S.W. 340, al-

though it has in Tennessee been said, as in other states, that courts of equity in case of inadequacy will seize upon any incident of surprise, undue advantage, or other inequitable circumstance to give relief. Meath v. Porter, supra; Coffee v. Ruffin, 4 Cold. (44 Tenn.) 487, 507; Warfield v. Ross, 38 Md. 85; Horsey v. Hough, 38 Md. 130; Long v. Richards, 170 Mass. 120, 48 N.E. 1083, 64 Am.St.Rep. 281. Moreover, the fact that the trustee making the sale has some official relation to the mortgagee will make it the duty of the court to scrutinize very closely all that he does in the execution of the trust. Clark v. Trust Co., supra. To this we might perhaps add that the duty imposed upon a court of equity to scrutinize closely all the proceedings in a foreclosure sale is still further enhanced when the original contract is a hard one. The trust deed here involved grants no period of redemption, and we are advised of no Tennessee statute granting such period after sale under a power in a trust deed or mortgage.

Applying these principles, we nevertheless fail to see anything shocking to the conscience or raising a presumption of fraud or unfairness in the conduct of the sale. It is true that $6,000 is substantially less than one-half the value which the court found might reasonably have been realized at the sale, and little more than one-third of what the court found to be the fair value of the property. But the defendant was prepared to bid the full amount of its debt, and any bid in excess of $6,000, but less than the debt would have availed the plaintiff nothing. If it be said that the defendant had the right under Tennessee law to secure a judgment for the deficiency, that is completely answered by the offer of the defendant in open court to surrender and cancel the notes, and indeed it has been held in Tennessee that where a mortgagee has purchased mortgaged property for less than the mortgage debt, but afterwards releases its claims to a deficiency judgment, the effect is the same as if the full mortgage debt had been bid. Erwin National Bank v. Riddle, 18 Tenn. App. 561, 79 S.W.(2d) 1032, 1040. Setting aside the effect of the realization upon a possible claim for deficiency, and the record shows that the plaintiff was informed prior to foreclosure that it was not defendant's practice to secure deficiency judgments and that it had no intention to do so, the inadequacy of the bid must be considered from the point of view of plaintiff's possible realization of his equity. No bid less than $11,650, the amount of the debt, would have

availed the plaintiff aught. The amount realized would have been applied to the extinguishment of the debt, and clearly any bid in excess of the debt and less than either fair value or realizable value at public sale would not have been so inadequate as to shock the conscience or sustain a presumption of unfairness. There was no such gross inadequacy of price as to warrant the court under accepted equitable principles in setting aside for that reason alone a sale otherwise regular and fairly conducted.

But the court, doubtless out of commendable sympathy for the misfortune of the debtor, always appealing strongly to the conscience of a chancellor, felt justified under its view of established rules, in seizing upon even slight proofs of unfair conduct to set aside the sale. Granted that sale for an inadequate price will sometimes sustain an inference of unfairness from incidents which otherwise might not support such inference, we think it furnishes no occasion for 'relying upon circumstances wholly immaterial, so lacking in substance as to be merely fanciful, or so unrelated to the sale as to have no conceivable bearing upon its conduct or upon the bids there made.

It is difficult to see how the failure of the defendant to bid the full amount of its debt constituted any element of unfairness. Certainly that could not have discouraged bidding, but tend rather to encourage it. The proofs show that there was a bidder willing to pay $7,500. He was not foreclosed by a $6,000 bid. The plaintiff cannot consistently complain that the defendant failed to bid the full amount of its debt and yet at the same time complain that it informed the bidder that it was prepared to bid the full amount of its debt. As to a grievance similar to the latter, it was said by Judge (afterwards Mr. Justice) Lurton, in Ætna Coal & Iron Co. v. Marting Iron & Steel Co., 127 F. 32, 39 (C.C.A. 6), "But this was intended to enhance the price, and not to suppress bidding, and how the complainant was injured or affected by the by-bidding of Hart, which only enhanced the value and encouraged competition, is not satisfactorily made out. It certainly falls short of that kind of mala fides which will affect a trustee's sale." In order that unusual circumstances not in themselves sufficient will in connection with inadequacy of price justify the setting aside of a sale, it must appear that the irregularity of the unusual circumstances caused the inadequacy of price. Wiltsie on Mortgage Foreclosure (4th Ed.) § 882.

982

Nor is there more to be said for the circumstance that the substitute trustee was appointed without the knowledge of the debtor. The trust deed required no notification to be given him, and in any event the record shows that he learned of the appointment of Barksdale shortly after the advertising was begun, and long before the sale. Equally difficult is it to understand how the defendant's refusal to purchase the plaintiff's unexpired insurance policies can possibly reflect upon the fairness or regularity of the sale, or the adequacy of the sale price, or of what importance it was that the defendant failed to credit the plaintiff's notes with the amount realized. Certainly the defendant could not both have bought the property and obtained deficiency judgment for the full amount of the notes, and mere failure or delay in making the ministerial entry of a credit upon the obligations certainly did not affect the fairness of the sale. The circumstance that the sale was made at a bad time for such sales is disposed of by the reference to Smith v. Black, supra. The defendant did not select the time for default, and those who buy on credit take the risk of depression at the time the credit expires. Smith v. Black, supra.

We conclude that the decree must be reversed and the cross-bill dismissed. A new decree consistent herewith may provide that the appellant deliver up the appellee's notes for cancellation.