# CRUTCHFIELD *v.* HEWETT.

LACHES; BURDEN OF PROOF; OFFICERS DE FACTO; DEED OF TRUST
SALE; NOTICE OF SALE AND POSTPONEMENTS.

1. Where in a suit in equity laches are not relied upon as a
   defense, it is discretionary with the court whether or not to raise
   the question of laches of its own motion.
2. A sworn allegation in a bill in equity to set aside a deed of trust
   sale, that the deed of trust was not executed by the person it
   purports to have been executed by, will not shift upon the defend-
   ants the burden of proving the due execution of the instrument.
3. Where a deed of trust has been acknowledged before a justice of
   the peace, it cannot subsequently be invalidated by showing
   that that officer was illegally appointed to his office, if the office
   itself existed under the law.
4. Equity will not, seventeen years after a sale of real estate under a
   deed of trust, set aside such sale on the ground that the notice of
   sale was published in but one newspaper, while the deed of trust
   provided that it should be published in "some newspapers."
5. It is immaterial that the names of the trustees appearing in such
   a notice of sale were not signed by the trustees themselves but
   by some one for them; and that notices of postponement of
   sale attached to the original notice of sale did not contain the
   names of the trustees but the auctioneer's name only.
6. It is within the sound discretion of trustees in a deed of trust
   whether or not to postpone a sale to another day, and all that
   is required is that notice of the postponement shall be given.
7. It is not necessary to advertise a postponement of a trustee's sale
   under a deed of trust for the same length of time required for
   the original notice of sale.
8. The presence of one of two trustees in a deed of trust, at a sale
   thereunder, is sufficient.

No. 173. Submitted December 12, 1893.—Decided February 6, 1894.

HEARING on an appeal by the complainants and a cross-
appeal by the defendants from a decree of the Supreme
Court of the District of Columbia, holding an equity term,
setting aside a sale of real estate under a deed of trust and
directing an accounting by the auditor. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree of the Supreme Court of
the District of Columbia, setting aside a sale of part of lot
six, in square 403, in the city of Washington, made by trus-

tees September 17, 1874. The bill was filed January 21, 1891, by the heirs of Emma L. Shepherd against certain devisees and trustees under the will of Robert C. Hewett, the purchaser at the said sale.

The lot in controversy was the property of said Emma L. Shepherd, who, joined by her husband, on June 2, 1873, conveyed the same in trust to Daniel E. Cahill and George Burgess, to secure the payment of five notes for $1,000 each, bearing the same date, and due one, two, three, four and five years therefrom respectively, with interest at the rate of ten per cent. per annum. The notes were signed by said Emma L. Shepherd and her husband Arthur Shepherd, and payable to Robert C. Hewett. The trust deed stipulated for the retention of the possession, with right to rents, profits, etc., by the grantors; but in default of payment of the said indebtedness, or any part thereof, or of accrued interest, the trustees were required, at the request in writing of said Hewett or other holder of said notes, or any of them, to sell the said premises, or so much thereof as might be necessary, at public sale, upon such terms and conditions as they might deem best for the interest of all parties concerned in said sale, " first giving three weeks' notice of the time, place and terms of said sale by advertisement in some newspapers printed and published in the city of Washington, and such sale to repeat or postpone from time to time, as they, the said parties of the second part, may deem expedient."

The bill alleges that Emma L. Shepherd never in fact signed the said trust deed; and that the said Frank M. Kelly, justice of the peace, before whom the same purported to have been acknowledged by her on June 2, 1873, was never in fact or in law a justice of the peace, but acted as such and claimed so to do solely by appointment of the Governor of the District of Columbia under an act of the Legislative Assembly of said District, approved August 16, 1871, which undertook to increase the number of justices of the peace in said District and take from the President his discretionary power to determine the number of said officers and appoint

them, and "was therefore *ultra vires* and void, and did not have the effect of creating an office which could be filled by a *de facto* or a *de jure* officer, so that the said Frank M. Kelly was a mere intruder, to whose acts and certificates there was no validity and by which no person is bound." It was further charged that.the sale was void because it was not advertised in "some newspapers," but only in one, the National Republican, though there were many others published at that time in the said city; that the time of sale was only advertised for two days, including the day of sale; that the notice was not signed with the names of the trustees, but with that of the auctioneer only; that neither of the trustees was present at the sale, which was made late on a rainy day, with but few purchasers present; that the property was sold for less than its value, and no offer was made to sell less than the whole; that the sale was made September 17, 1874, and one O'Donnell, acting for Robert C. Hewett, bid the property in, and on October 17, 1874, the trustees conveyed it to Robert C. Hewett. It is alleged also that Emma L. Shepherd died December 31, 1876, and that her husband, Arthur Shepherd, is a resident of Mexico.

There are no allegations of facts in the bill which tend to show that the property was capable of being divided and sold in parcels.

The trustees, Burgess and Cahill, were also made defendants. It does not appear that Burgess was served, and there is no answer by him in the record. Cahill answered the bill, saying with respect to the sale that the lapse of time prevents his recollecting all the facts distinctly, but that he believes all the requirements of the trust were complied with. He says that he was "present at and directed the sale, and that, to the best of his present recollection and belief, his co-trustee was also present in the discharge of his duty."

The trustees and heirs of Hewett, in their answer, show want of actual knowledge of the main facts, but allege their belief in the legality and fairness of the sale, and say that Mrs. Shepherd did sign and acknowledge the trust deed, and that

Frank Kelly was a justice of the peace, and his act in taking and certifying to the acknowledgment was lawful and binding.

The only proof respecting the advertisement is the notice of sale and postponements, with the dates of publication, as follows:

(A)

"Trustees' sale of a desirable two-story brick dwelling on the east side of Ninth street, between I and New York avenue, northwest.

"By virtue of a deed of trust, dated June 2, A. D. 1873, and recorded in Liber No. 717, folio 135, etc., one of the land records for Washington county, District of Columbia, the undersigned trustees, at the written request of the party secured thereby, will sell on Tuesday, the first day of September, A. D. 1874, at 5 o'clock P. M., in front of the premises, all that certain piece or parcel of land known and described as a part of lot numbered six, in square numbered four hundred and three (403), in the city of Washington and District of Columbia, beginning for the same at the southwest corner of said lot on Ninth street and running thence east ninety-one feet ten inches to an alley; thence north on the line of said alley twenty-six feet; thence west to Ninth street ninety-one feet ten inches; thence south twenty-six feet to the place of beginning.

"Terms: Two thousand dollars ($2,000) in cash, balance in one, two, three and four years, secured by a deed of trust on the property, with interest at 10 per cent. per annum, payable semi-annually; or all cash, at the option of the purchaser. A deposit of $100 will be required on day of sale, and terms of sale must be complied with in five days, or the trustees reserve the right to resell at the risk and cost of the defaulting purchaser.

"George Burgess,
"Daniel E. Cahill,
"Trustees.
"Wash B. Williams,
Auctioneer.

"August 8.

(B)

"The above sale is postponed until Monday, September 7, 1874, at the same hour and place. By order of the trustees.

"WASH B. WILLIAMS,

"September 2. Auctioneer.

(C)

"The above sale is further postponed until Tuesday, September 15, 1874, at the same hour and place. By order of the trustees.

"WASH B. WILLIAMS,

"September 8. Auctioneer.

(D)

"The above sale is further postponed until Thursday, September 17, 1874, same hour and place, on account of the rain. By order of the trustees.

"WASH B. WILLIAMS,

"September 16. Auctioneer.

---

"I certify that I have examined the files of the National Republican newspaper, for months of August and September, 1874, and find that the foregoing notice of sale marked (A) was inserted therein daily, from Saturday, August 8, to and including Thursday, September 17, 1874, and with addition marked (B) was inserted daily from September 2 to 7 inclusive, and with addition marked (B) and (C) was inserted daily from September 8 to 15 inclusive, and with additions (B), (C), (D), was inserted in the issues of September 16 and 17, 1874.

"Given under my hand this 14th day of September, 1892.

"R. J. MEIGS, Jr.,

"Asst. Clerk, S. C. D. C."

Very little testimony was introduced in the case. William O'Donnell remembered going to the sale with Hewett, at his request, to bid on the property for him, and thought he

had been in attendance once before when the sale was postponed.

George H. Boston said that he was an intimate friend of Shepherd and his wife; that he thought two or three attempts were made to sell before the final one; that he thinks he saw Cahill present at one time, but never saw Burgess, that he was not certain if Cahill was present when the sale took place, but does not think he was. On cross-examination this witness said that he did not see Burgess at any time at the sale, but that he thought the sale was postponed once through his acts. He saw Cahill the day of the first postponement and also at the second, but did not see him at the third time when the sale was actually made. He said that Arthur Shepherd knew of the sale; witness told him his wife was in great trouble over it and wanted him, but he did not attend the sale. Boston himself lived in the house at the time of the sale. He further said that a Mr. Harkness, by whom Mrs. Shepherd "was brought up mostly," told her he "would try to save the property if he possibly could, if Mr. Shepherd had not involved it too much." He said that the first postponement was made by some promise of Mr. Shepherd to pay the interest or a part thereof; the next was on account of "severe rain or something"; Mr. Harkness one time, he thinks, procured a postponement. He concluded his statement of these matters by saying, "I do not know just exactly. It has been so long ago I cannot recollect all the items and particulars." Being questioned about adjournments of the sale, he could not remember how these were made each time, but said: "I know at one time it was stated that the sale would take place at such a day and hour." Mr. Shepherd would not attend the sale, said he did not care. Mrs. Shepherd was there, but left and went to her mother's across the street.

This witness testified also that he knew Kelly well; but did not know how he was appointed, but "knew that he used to act." It was then proved that said Kelly was appointed justice of the peace by the Governor of the District

of Columbia, February 21, 1873, and acted as such for his full term of three years from date of appointment. Upon the hearing, a decree was made that the trust deed "be set aside, cancelled and held for naught, as also the sale under said deed of trust and the deed in pursuance thereof," &c. It was then further decreed that reference be made to the auditor to state an account between the complainants and defendants, charging the complainants with the five notes and interest, and charging defendants with rents, less sums paid for taxes, insurance and repairs, and permanent improvements. Defendants appealed from the decree setting aside the sale, and complainants have taken a cross-appeal to as much of it as orders the account before the auditor to charge them with the notes and interest.

*Mr. O. B. Hallam* for the complainants:

1. It is conceded that an action to recover realty, or to redeem land from a mortgage, can be brought at any time within twenty years, and that the statute of limitations does not constitute a bar; but it is urged that the modern application of the doctrine of *laches* shuts the plaintiff off, at some indefinite period. The word itself is of old French derivation, and signifies a slackness or negligence, or not doing; the omission of something that ought to have been done; it is neither more nor less than a form of estoppel, and, before it can be made available as a defense, it must be shown that the omission operated to the injury of the other party. Mere lapse of time does not of itself constitute laches, otherwise there would be no use for statutes of limitations; there must at least be acquiescence, if not a change of circumstances on the faith of acquiescence. Where, in a case like this, the creditor becomes the purchaser at his own sale, and remains the owner until death, and the property then passes to his children as devisees (practically heirs), there is no rule of equity that constrains a court to make a curtailment of the twenty years period, even though the plaintiffs had been all the time *sui juris.* Formerly in

equity there was no period of limitation at all; but this was found to be inequitable, and a general rule was established placing equitable and legal remedies on an equal footing as to time. *Bond* v. *Hopkins*, 1 Sch. & Lef., 429; *Cholmondeley* v. *Clinton*, 2 Jac. and Walk., 141; *Blandford* v. *Marlborough*, 2 Atk., 545; *Whaley* v. *Elliot*, 1 A. K. Mar., 345; *Stowel* v. *Zouch*, Plowden, 364; *Pugh* v. *Ball*, 1 J. J. M., 399; *Gillespie* v. *Bailey*, 12 W. Va., 80; *Washington* v. *Huger*, 1 Dessaus., 360; Thomas' Coke, 1, 179; Co. Litt., 403; *Kirman* v. *Kennedy*, 1 Ir. Eq., 472; 12 American and Eng. Ency. of Law, 552.

2. The plaintiffs, in the fifth paragraph of their bill, explicitly charge that Mrs. Shepherd never signed, sealed, acknowledged or delivered the deed, or signed or delivered either of the notes, or knew anything about the transaction until the sale, when she repudiated the papers and continued so to do until her death. The defendants' position, in argument, is that there is no testimony on the subject, and that a mere allegation will not stand. This position can only be excused, aside from the force of the pretended acknowledgment, on the ground of a misapprehension of legal conclusions. The plea is in the nature of *non est factum*, and, under all rules applicable to *non est factum* pleas, the burden of the proof is, not on the party sought to be held, but on the party seeking to hold him. The only ground for suspending such rule would be that the deed of trust, duly acknowledged, or certified by a competent person to have been duly acknowledged, reverses the order of proof. In other words, if it appears that the certificate of acknowledgment is invalid, and especially if it appears that the person making it was not authorized to make it, or to take the acknowledgment, then the person claiming under the deed of trust, or claiming a repayment of the money invested on its faith must show, where the execution of both the deed and notes is denied, that there was some form of execution, by evidence *aliunde* the certificate of acknowledgment, this certificate being, of itself, no evidence. This rule

would apply to any one, but there is certainly no hardship, in a case like this, when the party defending has, presumably, within his own possession or reach the notes and deed, which by production would speak for themselves, as to signatures at least, and for the non-production of which there is an entire failure to account.

3. We are remitted then to the question as to the acknowledgment. It is unnecessary to answer the defendants' general propositions that the acts of a *de facto* officer cannot be disputed by third persons, and that a person appointed to an existing office, though irregularly, is to be regarded as a *de facto* officer. These propositions are not disputed, and their presentation in argument must be the result of a misconception of the plaintiffs' position. What the plaintiffs contend, and now urge, is that there was no existing office to which Kelly, the alleged justice of the peace, could be appointed. Act of the legislative assembly of the District of Columbia, Feb. 27, 1801, 2 Stat. Law, 107; 1 Brightly's Digest, 244; act of Congress of Feb. 1, 1871 (organic act D. C.); act of the Legislative Assembly of the District of August 16, 1871.

The act of Congress, *supra*, conferring on the legislative assembly power to determine how many justices of the peace should be appointed and provide for their appointment, is manifestly unconstitutional not only because, as was held in the well-known case of *Roche* v. *Van Rywick*, the Congress had no constitutional authority to delegate its power of general legislation for the District to any other body, but also because a justice of the peace for the District is a United States officer. *Marbury* v. *Madison*, 1 Cr., 137; *Wise* v. *Withers*, 3 Cr., 331. Kelly was a mere intruder to whose acts and certificates there was no validity and by which no person is bound. *Norton* v. *Shelby Co.*, 118 U. S., 426; *Carlton* v. *People*, 10 Mich., 250.

4. Should the court think the deed of trust valid, yet the defects in the sale are so glaring and material as to require a setting aside. These, as stated in the bill, are, briefly, in

advertising in only one "newspaper"; the insufficiency of time notice of the day of sale as advertised; the failure to sign the last notice with the names of the trustees, and the fact that neither of the trustees was present at the sale.   See *King* v. *Duntz*, 11 Barb., 192 ; *Sherwood* v. *Reade*, 7 Hill, 431 ; *Bloom* v. *Burdick*, 1 Id., 141 ; *Sharp* v. *Johnson*, 4 Id., 99 ; *Thornton* v. *Boyden*, 31 Ill., 200 ; *Bailey* v. *Bailey*, 9 Rich. Eq. (S. C.), 342 ; Perry on Trusts, 602 *t-u* ; *Coxe* v. *Halstead*, 1 Green Ch., 311 ; 3 Md. Ch. Dec., 315 ; *Griffin* v. *Marine Co.*, 52 Ill., 140 ; *Jackson* v. *Clark*, 7 Johns., 223 ; *Heyer* v. *Deaves*, 2 John. Ch., 154.

*Mr. Edwin B. Hay* and *Mr. James B. Green* for the defendants:

1. The rights of the complainants, if they ever had any, have been lost by laches. *Hammond* v. *Hopkins*, 143 U. S., 224 ; *Jenkins* v. *Pye*, 12 Pet., 241 ; *Hayward* v. *National Bank*, 96 U. S., 611 ; *Richards* v. *Mackall*, 124 U. S., 183 ; *Harwood* v. *Railroad Co.*, 17 Wall., 78 ; *Godden* v. *Kimmell*, 99 U. S., 201 ; *Lansdale* v. *Smith*, 106 U. S., 391 ; *Maxwell* v. *Kennedy*, 8 How., 210.

2. It is alleged that the said Emma L. Shepherd did not in fact sign, seal or deliver said deed, or ever appear before the said Kelly, justice of the peace, and acknowledge the same in any manner whatsoever.   There is no testimony upon the subject.   *A mere allegation will not stand.*   "A deed will not be set aside on allegations that the grantor's signature and acknowledgment were obtained by fraud, compulsion and the like, except on *clear proof.*"   *Insurance Co.* v. *Nelson*, 103 U. S., 544.

3. The office of justice of the peace could at the time of Kelly's incumbency have been filled by an officer *de jure*, and that being so his acts, as an officer *de facto* were legal. *Petersilea* v. *Stone*, 119 Mass., 467 ; *Norton* v. *Shelby Co.*, 118 U. S., 426 ; *Cocke* v. *Halsey*, 16 Pet., 71.

4. The alleged informalities of the sale are not sufficient to affect it.   *Bennett* v. *Brundage*, 8 Minn., 385 ; *Judge* v.

*Booge*, 47 Mo., 544; *Coxe* v. *Halsted*, 1 Green (N. J.) Chancery, 311; *Richards* v. *Holmes*, 18 Howard, 143; *Tinkom* v. *Purdy*, 5 Johns. 345; *Russell* v. *Richards*, 11 Maine, 371; *Luntz* v. *Worthington*, 4 Barr, 153; *Warren* v. *Seland*, 9 Mass., 265.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The record in this case furnishes some excellent reasons for the existence and enforcement of the rule, that courts of equity, for the peace of society, will refuse to interfere on behalf of parties who have been guilty of laches in the assertion of their rights. Mrs. Shepherd knew all the facts concerning the trust deed, the notices of sale and the sale itself. Her friends Boston and Harkness were present. Harkness had assured her that he would save the property if he could, "if Shepherd had not involved it too much." He at one time procured an adjournment of the sale. No attempt was made to restrain the sale on account of the invalidity of the trust deed, the insufficient notice, or any other cause. No notice of the invalidity or want of formality of any of the proceedings was ever given. Mrs. Shepherd lived more than two years after the sale, and knew that the property was in the possession of the purchaser Hewett. The property sold for $6,050, and Boston testified that it was worth $6,000 or $6,500; there was no other proof of value. Hewett is long since dead. Harkness and the auctioneer Williams and the second trustee, Burgess, may also be dead, for aught that appears in the record. They do not testify, and no witness refers to them as either living or dead. The trustee Cahill says in his answer that his recollection fails as to the details, and he can only remember that he was at the sale and that it was legally and fairly made. Burgess at least joined in the deed to the purchaser. Boston, the only person examined respecting the occurrences at the sale, confesses the failure of his memory. There is no proof of the present value of the property, but it is to be presumed that there has been great increase

in it during the seventeen years which intervened between the sale and the institution of the suit.

Fraud is directly charged in the bill, and there are questions in the case the settlement of which may be important; and as defendants did not suggest the laches in the court below, we will not raise it here, though it is within our discretion, and is sometimes our duty, to do so of our own motion.

2. The burden of proof is upon the complainants to establish the necessary allegations of the bill which are denied, and this includes proof that Mrs. Shepherd did not execute the deed of trust. Counsel err in the assumption that the sworn allegation denying the execution is of the nature of a *non est factum* and imposes the burden of showing the execution upon those who claim title under that instrument. The defendants are in possession under a title good until overthrown. Complainants must not only prove that she did not execute the deed of trust, but the proof must be clear and convincing. No proof whatever was offered in support of the charge, and the instrument must be regarded as valid for all purposes.

3. The objection to the validity of the acknowledgment of the instrument before Kelly, the justice of the peace, whose title to the office has been assailed, is not well taken. It may be conceded that the act of the Legislative Assembly of the District of Columbia, conferring the power to appoint justices of the peace upon the governor, was invalid. But it does not follow that Kelly, who was appointed under the authority of that act, and recognized as a lawful officer, was not a *de facto* justice of the peace. The office of justice of the peace was not created by the act. It had been in existence ever since the cession under law of unquestioned authority. Grant that the governor had no rightful power to appoint to it; yet under a law then unquestioned, he made the appointment and issued the commission. Kelly received it, qualified and entered upon the duties of the office. No one questioned his authority. He was recognized on every

hand, and continued the active exercise of the powers of the office for his full term of three years. His appointment, qualification, action and recognition brought him clearly within Lord Ellenborough's definition of an officer *de facto :* " One who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law." *King* v. *Bedford Level,* 6 East, 356. This definition has never been departed from, and is stated with greater clearness by Mr. Justice Field, as follows: " Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is enough that he is clothed with the insignia of the office and exercises its powers and functions." *Norton* v. *Shelby County,* 118 U. S., 444. The rule and the reasons for its existence are well stated in the following cases: *Petersilea* v. *Stone,* 119 Mass., 465 ; *State* v. *Carroll,* 38 Conn., 449 ; *Brown* v. *Lunt,* 37 Me., 423.

4. It is not directly proved that the notice of sale was not published in more than one newspaper; but the presumption is so strong that we think it safe to assume that the publication was confined to the National Republican. It was published in this one paper, however, for the full time required by the terms of the trust.

The requirement in the instrument is for publication in " some newspapers." The original was not produced, and these words appear in the copy made from the record. Taking the words of the whole sentence together (see statement, *supra*), it might plausibly be contended that the word was converted into the plural by error of the recorder. But aside from this, the language is not plain and certain, and it would not be equitable or just to set aside a sale, if otherwise fairly and lawfully made for an adequate price, after such great lapse of time, even if the interpretation of the terms by the trustees was a mistaken one. If they honestly exercised their discretion, and no harm can be shown to have resulted from it, the lapse of time at least might well be held in equity to cure an even greater error.

5. The names of the trustees were signed to the notice of sale, and whether by their own hands or others makes no difference. It has been held that the name of a public officer even may be signed by another to a notice of sale; his action upon it is sufficient. *Coxe* v. *Halsted*, 2 N. J. Eq., 311.

As the notices of postponement were added to the original notice of the sale, which, with the names of the trustees thereto, was republished, we think it was not necessary to add their names to each of the postponement notices. The name of the authorized auctioneer was sufficient, and their names might well be held as signed to that which followed as well as that which preceded them. No one could possibly have been deceived.

6. Trustees, for good cause, have the right to adjourn a sale to another day, and it is sometimes their duty to do so. It is a matter of sound discretion with them. *Richards* v. *Holmes*, 18 How., 143.

The trust deed in this case expressly conferred the power to " repeat and postpone from time to time " as the trustees " may deem expedient." All that is required is that notice of the postponement must be given. Some authorities hold that the postponement must be advertised for the same length of time required for the original notice, but this we do not believe to be the correct rule. 2 Perry on Trusts, Sec. 602*u*. The very reasons for permitting the postponement are against it.

The adjournment of this sale was made once, if not twice, at the request of the owners of the property, and every time in their interest. The fact of adjournment and the new time of sale were regularly published from day to day as made, and the place was always the same. The plaintiffs failed to prove that the notice of adjournment was not also announced at each time of advertised sale by the trustees or by their authority. The proof shows plainly that it was announced on one occasion, and the circumstances point to its having been announced on each. It is apparent that the parties at interest were kept advised, and no complaint was

ever made by any one of them of an improper or illegal notice of adjournment.

7. The complainants make a more signal failure in the attempt to prove that the trustees were not present at the sale. Cahill's answer is positive that he was present, and he believes that Burgess was also. The only attempt to disprove this is by the witness Boston, who, after seventeen years had elapsed, said he did not think they were present. That Cahill was present, and we must hold that he was, is all, if not more, than was required under the circumstances to make good the sale. That the presence and action of one of two trustees will make a good sale, has been expressly held by the Supreme Court. *Smith* v. *Black*, 115 U. S., 308.

The grounds upon which it is sought to uphold so much of the decree appealed from as annuls the sale having been considered and held insufficient, it follows that *the decree must be reversed and the bill dismissed, with costs to the defendants ; and it is so ordered.*