TALBOTT *v.* MANARD.

*(Knoxville.* November 17, 1900.)

1. USURY. *What is.*

A borrower's contract to pay commission or other compensation to a broker for services to be rendered in securing a loan, is valid and enforceable when the broker induces a third person to advance and loan the money, but usurious and void when he himself advances the money and makes or takes the loan on his own account. (*Post, pp. 64–66.*)

2. RESCISSION. *Not granted upon partial failure of consideration.*

A deed, executed in payment and consideration of the amount " legally due " from the vendor to the vendee, and secured by mortgage on the lands conveyed, will not be set aside, at the suit of the vendor, on complaint that there had been included in the mortgage debt, certain commissions to the vendee, which were carried into the purchase price, supposed, at the time, to be due the vendee for securing the loan to be made by a third person, but which were not in fact due, because the vendee had himself advanced the money and taken the loan for his own benefit. The vendor's remedy in such case is not rescission, but recovery of balance of purchase price represented by the amount of such commissions. (*Post, pp. 66, 67, 72.*)

Cases cited: Rose *v.* Mynatt, 7 Yer., 30; Maury *v.* Lewis, 10 Yer., 114; Bartee *v.* Tompkins, 4 Sneed, 624; Cox *v.* Waggoner, 5 Sneed, 542.

3. SAME. *Not granted for inadequacy of consideration.*

Rescission of an executed sale of land will not be granted the vendor for mere inadequacy of consideration, unless it be so great as to shock the conscience and afford, *per se*, evidence of fraud. And even in such case it may be explained by showing that the transaction was entered into intentionally and with full knowledge, by parties having legal capacity, and without fraud or imposition on the part of the vendee. The inadequacy shown in this case is not sufficient to raise pre-

Talbott *v.* Manard.

sumption of fraud, and is besides explained satisfactorily. (*Post, pp. 68–72.*)

Case cited: Mann *v.* Russey, 101 Tenn., 596.

4. SAME. *Defeated by laches.*

Nothing can induce a Court of Equity to exercise its extraordinary jurisdiction for the rescission of contracts, save conscience, good faith, and reasonable diligence. Hence, a vendor, if otherwise entitled to rescission, will be repelled on account of his laches, who, for nearly two years, has delayed to prefer his claim for rescission of an executed contract, with full knowledge of all his grounds of complaint, in the meantime renting the land from the vendee and permitting him to put valuable improvements upon it. (*Post, pp. 68–72.*)

Cases cited: Kunçkolls *v.* Lea, 10 Hum., 576; Ruohs *v.* Bank, 94 Tenn., 57; Woodfolk *v.* Marley; 98 Tenn., 467.

---

FROM JEFFERSON.

---

Appeal from Chancery Court of Jefferson County. JNO. P. SMITH, Ch.

C. T. RANKIN, SHIELDS & MOUNTCASTLE for Talbott.

WASHBURN, PICKLE & TURNER and EUGENE HOLTSINGER for Manard.

BEARD, J. On March 21, 1894, the Complainant, Oscar Talbott, executed his note to G. W. Pickle for $7,500, due two years after date with interest from date, and to secure its payment, conveyed (his wife joining in the deed) to W.

R. Turner, as trustee, a tract of valuable land of four hundred acres lying in Jefferson County. On March 21, 1895, Talbott executed a note payable to the defendant, Manard, due one year after date, and secured it also by a trust deed on the same property. This trust deed was also made to W. R. Turner, trustee, and the note secured by it, embraced the legal interest for one year on the original note of $7,500, which was the property of Manard, and also a small judgment against Talbott of which Manard was the owner. On the eighteenth of March, 1897, no part of these debts having been paid, Oscar Talbott and his wife, and one Bradley, who was their son-in-law, and his wife, joined in a deed in fee, containing full clauses of warranty, by which they conveyed to Manard this property, reciting as a consideration thereof, "the sums of money legally due on the two trust deeds," and the right on the part of Talbott to occupy the land for a further term of twelve months, rent free. This deed was duly acknowledged by all of its makers and delivered to the vendee, and from that time until the filing of the present bill, to wit, on the twenty-third of February, 1899, the complainants occupied at first the whole and afterwards a portion of the property as the tenants of Manard.

Complainants in this bill seek a rescission of the contract of sale, as evidenced by the war-

ranty deed and a cancellation of the deeds of trust, and if this cannot be done, then a decree converting the warranty deeds into a mortgage security for the true debt of complainant, Oscar Talbott, to defendant, Manard.

The prayer for relief is rested upon two grounds, first, it is insisted that all these instruments were procured through fraud and duress upon the part of Manard, although the bill concedes that at the time of the execution of the first trust deed, in 1894, the latter advanced for Talbott $6,714.75, which, with interest, was unpaid at the time of the making of the deed in fee in March, 1897; and, second, that there was a parol contemporaneous agreement between the parties at the time of the execution of this last instrument, that Manard, after retaining enough of the land conveyed to him to discharge the debts due him from Talbott, was to reconvey to him the balance, which agreement, it is averred, had subsequently been repudiated by Manard.

The Court of Chancery Appeals, in their opinion, find every material averment of the bill against complainants. They relieve Manard of all charges of fraud, oppression, machination, or device in obtaining these various conveyances, and find that they were executed voluntarily and understandingly by the complainants, and for a valuable consideration. They also report that there was no parol contemporaneous agreement at the time of the exe-

cution of the deed in March, 1897. That Court,
however, decreed that this last conveyance was in
legal effect a mortgage, which should be held as
security for the debts due Manard, and the cause
was remanded to the Chancery Court in order to
ascertain the amount of these debts.

We understand this decree to be · rested upon
one of two grounds, or possibly upon both. The
bill charges, and that Court finds, first, that in
the $7,500 note Manard embraced an excess of
$785.25, over and above the sum of $6,714.75
advanced by him to Talbott, which sum was car-
ried forward and formed a part of the considera-
tion of the final warranty deed; and, second, that
there was a great disparity between the value of
the consideration paid and the land conveyed to
Manard.

The defendant, Manard, in his answer, admits
that this excess over and above the amount paid
by him for Talbott was embraced in the original
note, and ran through the subsequent transactions.

As to this feature of the case the Court of
Chancery Appeals finds as follows: "That Manard,
when approached by complainant for a loan to
remove judgments resting upon his 400 acre tract
of land, said that he would procure it for him,
but would charge him $785.25 as commission for
doing so; the loan to be secured, etc. . . .
Complainant Talbott agreed to this proposition.
At the time the proposition aforesaid was made,

Manard expected to make the loan for General Pickle, as the latter had some time before that requested him to place a loan for him, Pickle, if a favorable opportunity offered and the loan could be secured. . . . With this view the note for $7,500, evidencing the loan, and which embraced the commission aforesaid, was drawn payable to General Pickle, and the trust deed to secure the note was made to defendant Turner, as if the loan was made to General Pickle. As a matter of fact the money, $6,714.75, actually turned over to Talbott . . . was advanced by Manard out of his own funds, and as he did not see General Pickle for some time, he determined to carry the loan on his own account, and when after this, General Pickle was seen, he assented to the loan being so carried."

Upon this state of facts it is insisted that by thus agreeing to procure a loan for Talbott, Manard became the agent of the former, and was bound to exercise good faith to his principal, and that Manard's concealment from Talbott of the changed condition of the loan tainted the note and mortgage security, and was a vice which entered into all the subsequent dealings of the parties, including the deed of March 18, 1897.

That it was the duty of Manard, upon this altered condition as to the loan, to notify Talbott that he had not earned his commission, and credit the note by the sum representing this com-

22 P—5

mission is undoubtedly true. But did his failure to do so make the note and trust security, or the warranty deed thereafter executed, either void or voidable? It will be observed Manard's agency was to procure the loan, and for this he was to charge the commission. Upon the contract thus made, if he had succeeded in filling it, his right to charge a commission or compensation for his service is undisputed. Such an agreement is not usurious.

This undertaking, as has been seen, is reported by the Court of Chancery Appeals to have been in good faith, and the note was taken to a third party upon an assumption that he would carry the loan. Thus, when the note and mortgage were executed, and the money was paid to Talbott, there was no element of bad faith or usury on the part of Manard. He may have charged too high a commission for his service, but this would not serve to impeach the transaction. To this time and point it was a contract enforceable in law.

Does the fact that subsequently he concluded to carry the loan himself have a retroactive effect and make void or voidable the whole contract, which before that was good? Could Talbott, if informed at any time while the $7,500 note and trust deed were alive of the true history of this transaction, have avoided both upon the ground that his agent had concealed from him the fact in question? As-

suredly not. The utmost he could have done would have been to avoid so much of the note as embraced this commission. So it is the real transaction in the present case does not fall within the rule invoked by counsel for complainant, to wit: "If one person is placed in such fiduciary relations towards another that the duty rests upon him to disclose, and he intentionally conceals a material fact with the purpose of inducing the other to enter into an agreement, such concealment is an actual fraud, and the agreement is voidable without the aid of any presumption." 2 Pom. Eq. Jur., Sec. 956.

But if it were conceded that this view is erroneous in its application to this note and mortgage, it certainly is not so far as the deed in fee executed in 1897 was concerned. The relation of principal and agent extended only to the procurement of the loan. That relationship terminated in 1894. Talbott was under obligation to pay to Manard at least the money advanced to him and legal interest, as well as the judgment against him which Manard had bought. These items constituted a valuable consideration for the warranty deed thus executed. It is true Talbott would be entitled to recover the commission charged in 1894, and interest from March 21, 1894, but this would not affect the integrity of the deed or cut down the title which Manard had acquired through it.

As to the second of these facts—that is, the disparity between the price paid and the value of the property purchased, will that authorize the interference of the Chancery Court in favor of Talbott?

The Court of Chancery Appeals report. on the subject of the value of the property in question as follows: "At the time this deed was executed (March, 1897) the tract or farm, although run down . . . and its fences and improvements greatly out of repair, and although financial depression then prevailed . . . was worth, according to . . . Manard himself, . . . $10,000. Under the . . . weight of the testimony, it was worth from $12,000 to $14,000. Some witnesses put its value at $20,000, some $18,000, some $16,000, some $14,000, and some $13,000. Under the weight of the most reliable evidence a reasonable estimate of its value in March, 1897, was $13,000." For this property Manard gave up his debts, which then amounted to about $8,000.

Opinions as to value are always more or less speculative and uncertain. This is evidenced by the wide divergence of views of the witnesses in this case. But conceding the fact to be that the property conveyed was worth $5,000 more than Manard paid, is that alone sufficient to authorize a Chancery Court to decree a rescission of the contract?

In *Mann* v. *Russey,* 101 Tenn., 596, this Court

Talbott *v.* Manard.

said: "Mere inadequacy of consideration . . . will not induce a Court of Equity to avoid the contract at the instance of either party to it. . . . Parties competent to contract have a right, without legal interference, to make their own agreement and fix any price they see proper to receive or pay for property. Whenever they do this deliberately and knowingly, then their contracts are beyond impeachment, whether the price agreed upon be very great or very small. It is only when the contract presents unexplained a case of gross inequality that the presumption of fraud arises. This presumption, however, is one of fact, and therefore rebuttable."

Mr. Pomeroy, in Sec. 928 of 2d Vol. of his Equity Jurisprudence, says: "If there is nothing but mere inadequacy of price, the case must be extreme in order to call for the interposition of equity." And again in Sec. 926 he says: "If the parties being in the situation, and having the ability to do so, have exercised their own independent judgment as to the value of the subject-matter, Courts of Equity should not, and will not, interfere with such valuation." This author, however, recognizes in his note to Sec. 927, that the inadequacy of consideration may be so great as to place the burden upon the party seeking to enforce the contract, of showing affirmatively that the result is a deliberate and intentional transaction by the parties. It is true that in

rare cases it has been held that gross inadequacy —that is, inadequacy so gross as to shock the conscience—is decisive evidence of fraud, and of itself ground for rescission. But, then, fraud, and not inadequacy of price, is the only cause for equitable interference. 2 Pom., Sec. 927.

We do not think in the present case that the inadequacy of consideration is so great as to shock the conscience of the Court or raise a presumption of fraud within the rule of *Gwinne* v. *Heaton,* 1 Bro. Ch. 1, or *Mann* v. *Russey,* supra.

But if it were conceded sufficient to raise a presumption of fraud, yet we think the finding of facts by the Court of Chancery Appeals fully rebuts it. Talbott in full possession of his faculties without pressure, fraud, deceit, duress, or corrupt device on the part of Manard, came to him, "with the proposition to let" him have the property, and Manard accepted it. Using the words of that Court, "he (Talbott) simply recognized, in view of his habits, age, and environments, that he could not pay the mortgage debts on the land, and he was willing to let Manard have it at the amount of the debts on it, rather than have a foreclosure sale of it under the trust deeds."

Upon such facts we think a Court of Equity is without excuse for interposition, unless its office is to stand as the guardian of all persons who

contract, and see that absolute equality prevails between them.

But if it were granted that we are wrong ' in these conclusions, yet there is another well recognized rule of equity practice, which repels complainants in their effort to rescind, and that is, nothing can induce a Court of Equity to exercise its extraordinary power in decreeing rescission of contracts, save conscience, good faith, and reasonable diligence. When one with full knowledge of the fraud of which he complains sleeps on his rights, he will be repelled. *Knuckolls* v. *Lea,* 10 Hum., 576; *Ruohs* v. *Bank,* 94 Tenn., 57; *Woodfolk* v. *Marley,* 98 Tenn., 467.

In the present case the complainants waited nearly two years after the making of the warranty deed before they assailed it. They occupy the property as the tenants of Manard all that time, and see him make valuable improvements upon it, without protest. They make no claim that during this period they were ignorant of their rights or of what they now allege to be the unscrupulousness of Manard's conduct or the injustice of his claims. This being so, if ever entitled to it, they come too late for relief. The result is that the decree of the Court of Chancery Appeals is reversed.

In one respect, however, partial relief may be granted to complainant Oscar Talbott under the prayer for general relief. As has been stated,

the bill alleges that the original note of $7,500 contained an overcharge of $785.25. The answer of Manard gives a detailed statement of the conditions under which this sum was carried into this note. While the answer insists upon the good faith of this charge, yet it is evident upon its admissions that Manard was not entitled to this sum under his agreement, and as it constituted a part of the consideration for the deed in fee, it should be accounted for by him. To the extent of this charge there has been a failure of consideration, for which Manard may be compelled to account on these pleadings. *Rose · v. Mynatt,* 7 Yer., 30; *Maury* v. *Lewis,* 10 Yer., 114; *Bartee* v. *Tompkins,* 4 Sneed, 624; *Cox* v. *Waggoner,* 5 Sneed, 542.

A decree will be entered here in favor of complainant, Oscar Talbott, against defendant, Manard, for this sum of $785.25, with interest from March 21, 1894, the date of the first note. The complainant, Oscar Talbott, will pay three-fourths of all the costs of the case, and defendant Manard one-fourth.