## BRENARD MFG. CO. v. R. A. MARCUM.

Eastern Section.   May 22, 1926.

No petition for Certiorari was filed.

Contracts.   Rescission on executed contract will not be granted for inadequacy of consideration unless fraud is shown.

In an action to recover on notes given for phonographs where defendant filed a cross-bill asking to rescind the contract, held no fraud or any just grounds shown for rescission of contract and in the absence of such a showing a party will not be allowed to rescind a contract because of inadequate consideration.

Appeal from Chancery Court, Scott County; Hon. J. H. Wallace, Chancellor.

Affirmed.

Chas. H. Davis, of Huntsville, for appellant.

Conatser and Potter, of Huntsville, for appellee.

OWEN, J.   The defendant has appealed from a decree rendered against him in the chancery court of Scott county for $401.80, and costs of suit. He was sued on six notes, five notes of $60 each and one note for $28.   These notes were executed in December, 1920.   They were given for three Golden Throated Claxtonolas.   The bill was filed September 9, 1922.   At the time of the execution of the notes the defendant, who appears to be a successful merchant and business man at Helenwood, in Scott county, entered into a contract to become the agent for the sale of Golden Throated Claxtonolas, and to buy the machines from the complainant.   Defendant was to have exclusive agency for selling Golden Throated Claxtonolas and also the

recorders and records that would go with these Claxtonolas. It appears that Golden Throated Claxtonolas is a high-brow name for a phonograph.

In May, 1921, the defendant returned the Claxtonolas to the complainant; the complainant refused to accept them. Prior to the return of these three machines the defendant remitted the complainant $50 by check, but it appears that payment on this check was stopped at the local bank on which it was drawn.

The defendant filed his answer and cross-bill and sought to have the contract rescinded. The chancellor held against the defendant, dismissed his cross-bill and rendered judgment on the original bill. The greater part of the record is made up of correspondence between the complainant and the defendant. Judgment was pronounced on the notes with interest thereon from their maturity. The defendant excepted to the decree, prayed and was granted an appeal to this court and has assigned the following error:

"The court erred in not sustaining the cross-bill and decreeing that the defendant Marcum had a right to rescind the contract, as there is no dispute in the record but what the machines had been returned to the complainants in the original bill before the bill was filed in this cause, and that the defendant had placed the matter in statu quo by returning the machines." We are of opinion that the defendant did not use proper diligence in undertaking to rescind the contract. On January 1, 1921, the defendant wrote to the complainant as follows:

"I have just received the machines all right today. I am mailing the ten names as shown on the list."

It appears that the defendant agreed to send in certain names with the post office address to the complainant and mail out circulars advertising the Golden Throated Claxtonolas. This advertisement was in printed form, evidently very attractive, and bore the name of the defendant. On February 21st the defendant wrote complainant as follows:

"I am enclosing you a check for $50, and fifty dollars worth of coupons signed. Please give me credit for the same. I will have to return the large machine as we can't get it in playing order. It will start to play all right but it soon shuts off and won't run long enough to play a record. Yours respectfully, R. M. Marcum."

This letter was answered and the complainant gave instructions how to make the adjustments so that the large machine referred to in defendants letter would operate properly. The complainant also told the defendant in this letter under no circumstances could he return the instrument.

Following is a copy of the advertisement the complainants set out under the name of the defendant:

"A TIMELY MESSAGE FOR YOU:—It was our good fortune to obtain Dealer's Rights for the 'Golden-Throated' Claxtonola phonograph and we can now offer to our customers another article of unquestioned merit.

"Our reputation is built on Quality, Service and Satisfaction— therefore, we have chosen the 'Golden-Throated' Claxtonola.

"We desire that you should consider this a personal invitation to you and your friends, to come into our store a few minutes and hear the 'Golden-Throated' Claxtonola.

"Hearing is believing—and the 'Golden-Throated' Claxtonola will convincingly speak for itself. R. A. Marcum, Helenwood, Tennessee.

## "AN INVESTMENT IN HAPPINESS.

"Ownership of a 'Golden-Throated' Claxtonola phonograph means that you are making an investment in happiness from which every member of your family will derive rich returns throughout the coming year.

"The 'Golden-Throated' Claxtonola enriches for life by bringing into your home the priceless treasure of music and song paying back over and over again in real happiness its initial cost.

"The 'Golden-Throated' Claxtonola brings to the home better educational advantages, more wholesome surroundings and greater contentment.

"For your own happiness and for the happiness of those you love invest in a 'Golden-Throated' Claxtonola."

The defendant testified that he signed notes under a misunderstanding; that he thought they were paying certificates,—not notes,—but we find no fact that would justify relieving the defendant from the execution of his notes. There is no fraud proven; the contract was read over to him, he is an intelligent man, has been successful in business, operates a fairly large store and has been in business twenty years or more. Probably the shine wore off of the Golden-Throated Claxtonolas sooner than the defendant expected, the like silver-tongued orators, they were entertaining for a short time, but when it come to realizing on these Golden-Throated musical instruments there was a dryness and coldness in the investment, and it is possible that the Golden-Throated Claxtonolas became, in financial parlance "frozen assets;" but under the facts as we find them from the record, the defendant is not entitled to have the contract rescinded. In our opinion the judgment of the lower court should not be disturbed.

It has been said that it takes two to make a contract and just as true, it takes two to do away with one, in the absence in the contract itself of a term allowing either party to retire at pleasure; and that would be a rope of sand, because it would take away the quality of legal obligation. Gentry Co. v. Margoulis, 110 Tenn., 669.

"Rescission of an executed contract will not be granted for any inadequacy of consideration, unless it be so great as to shock the conscience and afford per se evidence of fraud." Talbott v. Mainard, 106 Tenn., 60.

We find no fraud or mistake that would warrant the defendant to rescind his contract for the purchase of the Golden-Throated Claxtanolas. Nothing can induce a court of equity to exercise its extraordinary jurisdiction for the rescission of contracts, save conscience, good faith and reasonable diligence. Talbott v. Mainard, supra.

The defendant has failed to prove any just grounds for rescinding his contract. It results that all of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed.

Complainant will recover of defendant and his surety on appeal bond the amount of the judgment rendered in the lower court, with interest thereon from the date of its rendition, and all the costs of the cause, including the cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.