BERNARD *v.* WALKER *et al.*

(*Knoxville,* Sept. Term 1947 (May Session 1948).)

Opinion filed June 12, 1948.

Rehearing denied July 17, 1948.

Jennings, O'Neil & Jarvis, of Knoxville, for appellant.

Egerton, McAfee & Armistead, of Knoxville, for appellees.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents a family controversy over a one-fourth partnership interest in a tobacco business at Asheville, North Carolina. By the original bill, Complainant, Park Bernard, seeks to reform a deed and certain other documents and have a trust declared in his favor to the extent of 25% of a business now owned and operated by the Defendant, James E. Walker, Jr., and his associates. Park Bernard is the son of the defendant, W. W. Ber-

nard, the nephew of the defendant, John S. Bernard and the cousin of the defendant Walker. By an amendment of the original bill Bernard Warehouses, Inc., a Tennessee corporation, was made a party defendant. As the Corporation has its situs at Greeneville, it is referred to in the record as "Bernards of Greeneville." The majority stock in this corporation is owned by various members of the Bernard family, and the defendant W. W. Bernard as President, signed pleas for the corporation.

The defendants John S. Bernard and the Walkers filed demurrers to the original bill and when these demurrers were overruled, filed answers. The defendant W. W. Bernard, individually, and as President of Bernard Warehouses, Inc., did not demur but filed separate answers for himself and the corporation, and by these answers, admitted the essential allegations of the bill, and further admitted that Complainant was entitled to a decree as prayed. At the outset, it is to be stated that the record affords abundant, and we think, conclusive evidence that the bill was filed by the son in friendly agreement with the father, and that though the father was made a nominal defendant, his interests were not antagonistic to those of the son, but on the contrary, if by the litigation the son succeeded in securing a one-fourth interest in the property involved, the father might well secure an identical share in similar litigation on his own behalf. That there was this agreement between father and son is clear from this statement in the original bill: "Complainant brings this bill on his own behalf and on behalf of any other interested party, including the defendant, W. W. Bernard, to the end that they may come in and assert their rights, titles and interests in and to said property and the earnings of said business."

And the following excerpt from the father's answer: "At this time, the answers of the other defendants have not been filed, and your defendant, after said answers are filed, may find it necessary to file a cross-bill himself and seek affirmative relief. Should such necessity arise, he now reserves to himself the right to file such cross-bill."

The conclusion is fortified by the father's subsequent failure and refusal to testify against his son's interests, although principal facts of the controversy were known to the father and determinative issues arose from his decisions and conversations.

After the defendants had answered, and certain minority stockholders of Bernards Warehouses, Inc., had successfully intervened on the ground that W. W. Bernard, though President of the corporation, was not in fact defending the action or raising defenses available to the corporation, the case was tried before a jury in the Chancery Court. At the close of Complainant's evidence, which consisted of his own testimony and that of an accountant, and again at the close of all the evidence, the defendants moved that the issues be withdrawn from the jury and the bill be dismissed. The Chancellor overruled these motions, exceptions were preserved, and thereafter there was a verdict and a decree for the Complainant.

On appeal to the Court of Appeals, that Court held that the Chancellor was in error in submitting issues to the jury, that the motions to withdraw the issues should have been granted and dismissed the bill. The Court of Appeals further overruled a motion of the Complainant to dismiss the bill of exceptions.

The Complainant filed petition for *certiorari*, which we granted, we have heard argument and the case is now before us for disposition.

Three of the assignments of error assail the action of the Court of Appeals in overruling a motion of petitioner to strike the bill of exceptions and affirm the decree. The facts upon which the motion is predicated are these. The jury returned a verdict against the defendants on August 17, 1946. The several defendants filed motions for new trial between August 24 and August 29, 1946. According to a photostat of the Chancery motion docket, on September 13th motions for new trial had been filed and opposite the motions in the column headed "Action," there appears this entry, "heard, denied and appeal allowed." There is no signature of the entry and the statement is made in briefs that the entry was made by the Clerk and Master, but since it was unsigned it is immaterial who made it. The term of the Chancery Court at which this case was tried ended on November 2, and a new term commenced on November 4, 1946. On October 31, 1946, and before expiration of the trial term, the following order was signed by the Chancellor and entered on the minutes: "In this cause it appearing to the Court that motions for new trials have been seasonably filed by defendants (naming them,) and that the present term of this Court will expire before the Court has acted upon said motions, it is therefore ordered, adjudged and decreed that the aforesaid motions for new trials and all other matters to be adjudicated in this cause be, and the same are, hereby continued to the next term of this court, which begins on Monday, November 4, 1946."

On January 7, 1947, and within the November term, a "final decree" was entered on the minutes and commences with the following recital:

"This cause came on for final hearing before the Honorable A. E. MITCHELL, Chancellor, on Friday, September 13, 1946, upon the motion of the defendants to set

aside the findings of the Jury, and to grant them a new trial on the issues of fact submitted to the Jury, which motion on due consideration thereof, is by the Court overruled.

"And, thereupon, the cause coming on to be further and finally heard on said day . . . "

▮▮ On this, petitioner argues at length that since the motion docket shows that the recital of the first paragraph of the January 7th decree was true, that therefore, the decree of October 31, 1946, was ineffectual to extend the term. We think it immaterial whether as defendants insist, the insertion of "September 13, 1946" was a typographical error, the recital did not determine the effective date of the decree which was the date of its entry on the minutes, January 7, 1947. The oral announcement of the Chancellor and the memorandum of it entered on the motion docket was not action of the Court, which can only be by entry on the minutes and signature of the Chancellor. "While in this case the chancellor had announced the decree, still none had been entered and signed. It was still in the breast of the court, and there was nothing of binding force in any sense upon the chancellor or the parties. If the chancellor had died or resigned before the enrollment of a decree, the case would have remained on the docket for trial. The law recognizes nothing as an order or decree until it is upon the minutes of the court." *Fraker* v. *Brazelton*, 80 Tenn. 278, 280, 281.

This rule as stated in *Fraker* v. *Brazelton, supra,* has been approved in all of our more recent cases. *Citizens' Bank & Trust Co.* v. *Bayles*, 153 Tenn. 40, 50, 281 S. W. 932; *Wilkinson* v. *Johnson City Shale Brick Corporation*, 156 Tenn., 373, 378, 299 S. W. 1056, 2 S. W. (2d) 89;

*Mullen* v. *State,* 164 Tenn. 523, 529, 51 S. W. (2d) 497; *Jackson* v. *Jarratt* 165 Tenn. 76, 81, 52 S. W. (2d) 137.

Since, therefore, the language of the decree of October 31, 1946, "that the present term will expire before the court has acted upon said motions," was not contradicted by any other language in the minutes of the Court, the recital imports absolute verity, and the case stood as if at the end of the May term, the Chancellor had the motions for new trial under advisement.

In a supplemental brief filed after the case was argued before us, counsel for the motion makes this statement: "We again call the Court's attention to the fact that this order in its recitation that the present term of this court will expire before the Court has acted upon said motions (referring to the motions for new trials) is in the teeth of the admitted fact that said motions were overruled by the Court on September 14, 1946, . . . ."

Apparently, counsel in this zeal is unwilling to recognize the difference which here exists, between "admitted fact" and "admitted law." *Waller* v. *Skelton,* 186 Tenn. 433, 211 S. W. (2d) 445.

The motions for new trial being "still in the breast of the court" (*Fraker* v. *Brozelton, supra*), the order of October 31, was fully effective to carry the case over to the new term, and to preserve rights of the defendants to file a bill of exceptions within 60 days after January 7, 1947, when the final decree was entered. That final decree so provided and the bill of exceptions was approved by the Chancellor, and filed on February 21, 1947. The pertinent section of the Code, as it had been amended and was then in force, is as follows: "Whenever a motion for a new trial has been filed in a suit tried in any of the criminal or circuit or chancery courts within the time allowed by law and by rule of said court, and said

motion has not been acted upon by said court at the time
of the adjournment of its term, but shall be overruled
granted or otherwise acted upon at the next or any sub-
sequent term, any party to such suit may, by leave of
court, tender, have approved and filed a bill of exceptions
within sixty days from and after the date of the court's
action upon such motion; and no special order of the
court granting leave to file a bill of exceptions shall be
necessary, but the certificate of approval of the trial
judge upon any bill of exceptions, filed within sixty days
as aforesaid, shall be sufficient evidence of the leave of
the court to file such bill of exceptions.'' Williams' Code,
sec. 8822, (1946 Supplement).

We think the Court of Appeals correctly overruled the
motion to dismiss the bill of exceptions and assignments
of error attacking that action, are overruled.

The Bernard family, represented here, has been in the
tobacco business at Greeneville, Tennessee, for many
years. Bernard Warehouses, Inc., was organized by Com-
plainant's grandfather, and has since been owned and
operated by two generations of the Bernard family, with
minor stock interests in others. For some years prior to
1937, the Greeneville corporation had done satisfactory
business with one B. B. Saunders, in Asheville, North
Carolina. He knew personally several members of the
Bernard family, who were active in the tobacco business.
Several of the corporate officers at Greeneville wanted
an Asheville subsidiary, and some months prior to Sep-
tember 1937, defendant John S. Bernard negotiated with
Saunders to buy his business. Later W. W. Bernard
learned that Saunders was willing to sell, and instructed
the Complainant, Park Bernard, who was then in North
Carolina, to contact Saunders and report what price
Saunders would take for his business. The Complain-

ant carried out his father's instruction and reported, according to Complainant's testimony, that on account of the friendly feeling Saunders had for Bernards of Greeneville, that Saunders would sell to Bernards of Greeneville his lease and equipment for $3,500. This action of Complainant was in the early part of September 1937, and so far as the evidence discloses, this was the last and only activity of Complainant in the organization and operation of the Asheville tobacco business, which is the subject of this lawsuit.

When Saunders' selling price was communicated to W. W. Bernard, he went to North Carolina to raise the money for the acquisition of the Saunders business and to form a partnership for its operation. Although Park Bernard was with his father in North Carolina, he took no part in the negotiations and there is no suggestion in the record that he contributed or offered to contribute, or was able to contribute any part of the money or credit necessary to acquire the Saunders business. W. W. Bernard had a private conference with defendant James E. Walker, Jr., and as a result of that conference, Walker prepared the following memorandum:

"September 15, 1937.

"We, the undersigned do, hereby, enter into a partnership agreement for the said purpose of operating a tobacco warehouse in Asheville, North Carolina, to be called Bernard's Warehouse. Each of the undersigned shall be equally interested in said business. W. W. Bernard 25%, J. S. Bernard 25%, Park Bernard 25% and James E. Walker, Jr., 25%.

"It is further agreed that James E. Walker, Jr., shall be the manager and his salary be fixed at $1500.00 and said party shall have one third of the profits of the leaf account.

"In the event that the services of James E. Walker, Jr., be needed in Greeneville, Tenn., following one year's operation or any succeeding years, in Asheville he will resume his duties in Greeneville with Bernard's Warehouses, Inc.

" (Signed)   W. W. Bernard
"James E. Walker, Jr."

It is to be noted that this memorandum was signed only by Walker and W. W. Bernard. When W. W. Bernard showed this memorandum to John S. Bernard, the latter refused to agree and W. W. Bernard notified Walker that the deal proposed in the memorandum was off, but that Bernards of Greeneville would buy the business of Saunders in its own name. This occurred two or three days after the preparation of the memorandum, or about September 18, 1937. On September 21, 1937, W. W. Bernard, who was accompanied by the Complainant, Park Bernard, so that the latter knew the events as they occurred, went to Valdosta, Georgia, and closed the trade with Saunders, and the bill of sale from Saunders to Bernards of Greeneville, is an exhibit to Complainant's testimony. In October 1937, the corporation bought the real estate on which the Asheville business had been operated under a lease, and thereafter spent several thousand dollars in enlarging the building and making improvements.

J. E. Walker, Jr., was the salaried manager of the Asheville operation and during the season 1937 and 1938 did a profitable business, turning in some $12,000 to the corporation at Greeneville. Nevertheless, on account of pressure from its banking connection, the Greeneville corporation decided to sell the Asheville property and business after a formal meeting of the directors had decided that this should be done. Learning that the corpora-

tion was about to sell the business in Asheville, James E. Walker, Jr. made an offer to buy the business for $30,000 on terms as follows:

$5,000 in cash; 4 notes of $2,500 each, to be dated April 15, 1938, maturing October 1, 1938, March 1, 1939, October 1, 1939; March 1, 1940 and the assumption by him of a balance of $15,000 due on the real estate to an Asheville bank.

The offer of Walker was accepted and the corporation executed and delivered to him and his associates, an absolute bill of sale and an unconditional deed to the realty, conveying without reservation, the entire business in Asheville, North Carolina. The transaction was consummated in the early part of April 1938. From letters written by W. W. Bernard to J. E. Walker, Jr., dated April 28, and May 3, of 1938, and by the clear admission of Complainant on cross-examination, Complainant knew all details of the sale to J. E. Walker, Jr., and his associates shortly after the sale occurred, and when asked why he took no steps then to protect his alleged interest, his only excuse was that his father advised against it.

From the time of the purchase in 1938 until July 1940, James E. Walker, Jr., and his associates operated the Asheville business as individuals, and in July 1940, the business was incorporated under North Carolina law, and all assets transferred to the corporation. The business had some bad years and it was necessary from time to time, to secure financial help from third persons. In January 1942, the charter was surrendered and a limited partnership was formed. Three members of this limited partnership are not parties to this litigation and are not before this Court. Under this first limited partnership agreement, the business was operated until Jan-

uary 1, 1945, when on acount of the fact that to save the business, it had been necessary again to secure new capital, a new limited partnership was formed and two more members were added, neither of whom is a party to this suit or before this Court. So, as matters stood when the case was tried in the Chancery Court, there were five members of the partnership who owned and operated the business at Asheville, North Carolina, who were not parties to the suit and not before the Court.

The original bill was filed April 15, 1945,—seven years and seven months after the sale by Saunders to the Bernards. of Greeneville, and seven years after the sale by the corporation to J. E. Walker, Jr., and his associates. The theory of Complainant may be deduced from the prayers of the bill which are as follows:

"(2) That on the hearing, complainant be granted a decree declaring him to be the owner of and entitled to a one-fourth undivided interest in and to said Asheville warehouse property and all equipment therein, and to decree for one-fourth of the earnings of said business from and including the 1937-1938 sales season to date, and to this end that all necessary orders, references and decrees be had.

"(3) Complainant prays that said deed executed on or about April 15, 1938, by Bernard Warehouses, Inc., to the defendant James E. Walker, Jr., conveying to him said Asheville warehouse property and the equipment and business, a description of which property will be furnished on or before the hearing, be reformed so as to express the true intent and purposes of said deed, and that it be decreed that the defendant, James E. Walker, Jr. was never the owner in fee of said property at any time, but that he has held said property in trust as Trus-

tee for himself and the defendants W. W. Bernard and John S. Bernard and this complainant;"

■ It is immaterial to a decision of this case, that we find that parties necessary to an effectual decision for Complainant are not before the Court, and that the Complainant has wholly failed to introduce "clear, cogent and convincing" (*Hunt* v. *Hunt*, 169 Tenn. 1, 80 S. W. (2d) 666) evidence to modify the terms of the written documents of sale by Bernards of Greeneville to Walker and his associates, and so to set up by parol a trust in favor of himself, because we find on undisputed evidence that the Court of Appeals was justified in dismissing Complainant's bill for laches.

A plea of laches supported by the 6 and 3 year statute of limitations (*Carpenter* v. *Wright*, 158 Tenn. 289, 13 S. W. (2d) 511) was interposed by counsel for the Walkers and Bass, and motions were made to dismiss the bill on that ground and exceptions were preserved to the Chancellor's action in overruling the motion.

■ From our statement of the undisputed evidence in this record, the two essential elements of laches concur. These are the negligence and unexcused delay of Complainant in asserting his alleged claim and injury to the rights of third persons intervening during and therefore on account of the delay. Here, the Complainant knew immediately of the sale by Bernards of Greeneville to Walker. He asserted no objection or claim on account of the sale. Rights of third and innocent parties have clearly intervened, and we think his is clearly a "stale demand" (Gibson, p. 87, sec. 70) on which a Court of Equity will afford him no relief. ". . . when the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." *Evans* v. *Steele*, 125 Tenn. 483, 495, 145 S. W. 162, 165.

The rule so stated by Judge LANSDEN has been frequently upheld in more recent decisions. *State* v. *McPhail*, 156 Tenn. 459, 2 S. W. (2d) 413; *Samuel* v. *King*, 158 Tenn. 546, 14 S. W. (2d) 963; *Carpenter* v. *Wright*, 158 Tenn. 289, 13 S. W. (2d) 511.

Other cases where rescission or modification of written contracts was sought and where this Court refused relief because of unreasonable delay, are *Talbott* v. *Manard*, 106 Tenn. 60, 71, 59 S. W. 340; *Smith* v. *Greaves*, 83 Tenn. 459; *Knuckolls* v. *Lea*, 29 Tenn. 577; *Woodfolk* v. *Marley*, 98 Tenn. 467, 40 S. W. 479.

We think it so clear that the judgment of the Court of Appeals must be affirmed on account of Complainant's laches, that it is unnecessary to discuss further the validity of the other grounds on which the Court of Appeals was impelled to dismiss the bill.

Affirmed.

BURNETT, J., not participating; NEIL, C. J., and PREWITT and TOMLINSON, JJ., concur.